CHARLES O. PARKS *v.* LORA PARKS.*

*(Knoxville.* September Term, 1928.)

Opinion filed December 8, 1928.

*Corpus Juris-Cyc References: Divorce, 19CJ, section 276, p. 110, n. 48.

FRAZIER & FRAZIER and FLETCHER & BERNHARDT, for plaintiff in error.

THOMPSON & BALLARD, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The Chancellor dismissed complainant's bill for a divorce, upon a demurrer challenging the sufficiency of the facts stated in the bill as a ground for divorce, and complainant has appealed.

*(1)* The suit is grounded upon Acts of 1919, chapter 70, which provides:

"It shall be a cause of divorce from the bonds of matrimony that the wife is guilty of such cruel and inhuman treatment or conduct toward her husband as renders it unsafe or improper for him to cohabit with her."

It does not appear that this statute has heretofore been construed or applied by this court.

The facts stated in the bill are substantially as follows: The parties were married in 1905 and have three children, two young ladies who are self-supporting, and a son who is still in school. The complainant is a district manager at Chattanooga for an insurance company. In

late years the defendant has become increasingly quarrelsome toward him, and from 1923 to 1925 left his home on three occasions, remaining away from a week to three months. The bill was filed September 12, 1927. For several years the defendant has "falsely and without any sufficient cause for so doing" accused the complainant of unlawful intimacy with various women of ill repute, and these accusations were made by defendant not only to the complainant but were repeated by her to her neighbors and social acquaintances from time to time. Nine individuals are named as persons to whom these accusations had been made. On September 1, 1927, defendant repeated these accusations to the supervisor of the insurance company by whom complainant is employed, and he was required to explain the situation to his employer. Defendant has threatened on numerous occasions to take the life of complainant, and he charges on information and belief that on or about August 1, 1927, defendant borrowed a pistol from one Joe Overby "with the express purpose of murdering complainant." The bill avers that defendant will execute this threat if she has an opportunity and that complainant's life is unsafe when he cohabits with her. The bill avers that complainant endured this conduct of defendant for many years until his "very existence became unbearable and he was compelled to leave his home and take up residence elsewhere." Following his departure from the home, defendant "continued her abuse of him and commenced a studied campaign of slander and disgraceful falsehood."

The averments of the bill as to the temporary abandonment of complainant by defendant two years or more before the filing of the bill are not material, and may be disregarded.

The inquiry here is whether an averment by a husband that his wife, falsely and without any just cause, has continuously and over a long period of·time accused him of indiscriminate unlawful intimacy with lewd women, communicating her charges to the husband's employer and to his friends and acquaintances from time to time, accompanied by threats to kill, and the act of borrowing a weapon with the stated purpose of killing him, as a result of all of which the husband has found his existence in his home unbearable and has been compelled to leave and take up his residence elsewhere, constitutes a charge that the wife has been guilty of such cruel and inhuman treatment or conduct toward her husband as renders it unsafe or improper for him to cohabit with her, so as to entitle the complainant to have his bill answered.

(2) In determining the sufficiency of the facts stated in a bill, assailed by demurrer, it must be borne in mind that a demurrer is a pleading not favored, and that the courts should "make every reasonable presumption in favor of the bill." *McFarland* v. *Massachusetts Bonding & Insurance Co.,* 157 Tenn., 254, 8 S. W. Rep. (2nd), 369; Gibson's Suits in Chancery, sec. 317.

In *Shell* v. *Shell,* 34 Tenn. (2 Sneed), 716, 728, with reference to the statute authorizing the granting of a divorce to a wife on account of the cruel and inhuman treatment or conduct of her husband, this court said:

"We would not be understood as holding that nothing short of personal violence would constitute a ground for divorce under our statute. We have recently held that deliberate and repeated accusations of adultery against the wife, by her husband, without grounds, is a sufficient cause. What other circumstances of 'cruel and

inhuman' treatment or personal indignities, either by words or actions, would be sufficient, need not now be considered, as each case must stand upon its own facts, and scope must be given, in any construction, to meet such cases of cold-blooded cruelty and barbarity, on the part of husbands towards dutiful and innocent wives, which would be reasonably calculated to render their condition intolerable or unsafe, as explained in a foregoing part of this opinion.''

In *Gardner* v. *Gardner,* 104 Tenn., 410, 412, this court again held that acts of personal violence are not essential to an accusation of cruel and inhuman treatment as a ground for divorce. The court said:

''It is now well settled by this Court that cruel and inhuman treatment within the meaning of the statute is not confined to acts of personal violence, but includes such treatment as endangers the wife's health and renders cohabitation intolerable.

''In 5 Am. & Eng. L. (Old Ed.), page 799, it is said: 'Cruelty as a cause of divorce is the willful, persistent causing of unnecessary suffering, whether in realization or apprehension, whether of body or mind, in such a way as to render cohabitation dangerous and unendurable.' ''

It would hardly be denied, in view of our reported cases, that if the bill in the present cause had been filed by the wife against the husband, the averments would be held sufficient, upon demurrer. *Thomas* v. *Thomas,* 42 Tenn. (2 Cold.), 123; *Payne* v. *Payne,* 23 Tenn. (4 Humph.), 499; *McClanahan* v. *McClanahan,* 104 Tenn., 217; *Gardner* v. *Gardner, supra.*

It is not likely that the statute of 1919 was enacted merely to protect a husband from physical violence at the hands of his wife. The usual disparity in physical

strength, in the husband's favor, renders it unlikely that the statute was deemed necessary for protection against physical violence alone. It can readily be conceived that a false accusation of adultery on the part of the wife against her husband, given the publicity and repetition disclosed in complainant's bill, would have a tendency not only to destroy the business and social position of the husband, but to shame and humiliate him beyond endurance. Having due regard to the character, the degree of refinement and sensibilities of the parties involved, as may be developed in the evidence, we can see no reasonable ground for giving to the statute of 1919 any fundamentally different construction or application than has been given to the similar provision for the protection of the wife.

In Corpus Juris, vol. 19, pp. 49-50, under the general heading "Divorce," it is said:

". . . the modern doctrine is that any unwarranted conduct by either spouse which causes the other mental suffering of sufficient degree constitutes such cruelty as will authorize a divorce, as where a wife renders her husband's living with her unbearable by bemeaning him and refusing to attend to her household duties, or by wantonly assailing his character and demanding his expulsion from membership in a fraternal organization to which he belongs."

See also Ruling Case Law, vol. 9, pp. 346-347.

Complainant's bill avers: "and the defendant followed him up and continued her abuse of him and commenced a studied campaign of slander and disgraceful falsehood."

Considered on demurrer, we think this averment negatives any inference that the defendant was acting in good

faith and without malice in making, repeating and giving publicity to the alleged false accusations; and the fair inference to be drawn from the bill is that defendant was moved by a desire to injure complainant in his social and business relations.

We do not hold that upon bare proof of the truth of the averments of the bill the complainant would be entitled to a decree of divorce. (3) Whether a decree of divorce will be pronounced upon pleadings and proof necessarily involves an exercise of some discretion on the part of the Judge or Chancellor, affected in some measure by considerations of public policy. But we are strongly of the opinion that the averments of the bill make a *prima-facie* case of cruel and inhuman treatment or conduct, which should not be dismissed on demurrer, but which the defendant should be required to answer.

It results that the decree of the Chancellor will be reversed, and the cause remanded for answer and hearing.

The complainant will pay the cost of the appeal.