STARGEL v. STARGEL.—107 S. W. (2d), 520.

Middle Section. April 3, 1937.

Petition for Certiorari denied by Supreme Court, July 3, 1937.

Rutherford & Rutherford, of Nashville, for appellant.

J. B. Redmond, Jr., and Bowers, McNamara & Bowers, all of Nashville, for appellee.

FAW, P. J.   This is a divorce suit brought by Paul Grandville Stargel against his wife, Mary Elizabeth Stargel, and tried before the judge of the First circuit court of Davidson county upon the original bill of the complainant, the answer of the defendant thereto, and the testimony of witnesses examined in open court, from all of which the court found that the allegations of the original bill have been fully sustained by the proof, and that the defendant has been guilty of such cruel and inhuman treatment or conduct to-wards the complainant as renders it unsafe and improper for him to longer cohabit with her.

It was therefore ordered, adjudged, and decreed by the court that the bonds of matrimony heretofore uniting the parties to this cause be and the same are hereby forever dissolved, and that the complainant be granted an absolute divorce from the defendant and restored to all the rights and privileges of an unmarried person; that the defendant be given the exclusive care, custody, and control of the minor child of the parties, with the privilege of the complainant to see and visit said child at reasonable times and places; that neither the complainant nor the defendant shall say or in any manner influence, or prejudice the said minor child against the other party; that the complainant shall pay into the hands of the clerk of the trial court the sum of $4 per week for the support of said minor child; and that the complainant will pay the costs of this cause, but, he being the successful party, will not be required to pay the state and county taxes which is adjudged against the defendant.

Thereafter, the court overruled a motion of the defendant to vacate the aforesaid decree, and the defendant excepted to the

action of the court in overruling said motion, and prayed an appeal in the nature of a writ of error to this court, which was granted by the trial court, and defendant perfected her appeal by taking the oath prescribed for poor persons. In divorce cases, an "appeal" (not an appeal in error) is the only mode of reviewing errors. Code, section 9039. But we will treat the "appeal in the nature of a writ of error" in this case as an appeal. Gulf Refining Co. v. Frazier, 15 Tenn. App., 662, 664.

The case is here upon the technical record, and the appellant has assigned errors upon the technical record, but has adopted the somewhat novel procedure of combining with her assignment of errors a petition for a writ of mandamus commanding the trial judge to sign a bill of exceptions which accompanies the assignment of error and petition as an exhibit thereto, and commanding the clerk of the trial court to mark said bill of exceptions filed and copy same into the transcript in this cause.

The order of the trial court granting the appeal was entered on March 7, 1936, and the defendant was thereby allowed thirty days from that date within which to prepare and file her bill of exceptions.

Following the appellant's assignment of errors and in the same document is a statement which we assume was intended as the foundation of the petition for mandamus. It is therein stated, in substance, that a bill of exceptions, prepared and approved by counsel for complainant, was left with the clerk "during the term of court in which the decree was entered and was actually presented to the Judge on April 10, 1936, prior to the time he signed his minutes," but the judge did not sign it.

It is seen that the period of thirty days granted to the appellant for filing the bill of exceptions expired on April 6th, and that it was not presented to the trial judge until the fourth day after the lapse of the period of thirty days granted as aforesaid. Although not in terms so stated in the petition, we infer that the trial judge declined to authenticate the bill of exceptions for the reason that the granted time had expired before it was presented to him.

It is insisted for the appellant-petitioner that, as it does not appear that the trial court had a general rule limiting the time within which bills of exception may be filed to thirty days, the limitation of thirty days in the instant case was "a nullity," and that it was the duty of the trial judge to sign the bill of exceptions upon its presentation to him at any time during the term. We do not so understand the law. A bill of exceptions may be made up and signed at any time during the term, if there be no rule or order of the trial court to the contrary; but a party is not entitled as a matter of right to the whole of the term in which to present it.

An order limiting the time for the preparation and filing of a bill of exceptions may be made in individual cases, and, in the absence of a compliance with such order, the right to file may be denied altogether. Hinton v. Insurance Co., 110 Tenn., 113, 118, 119, 72 S. W., 118.

██ ██ This court has no appellate jurisdiction of mandamus cases, but, in aid of its appellate jurisdiction in other cases, it has inherent power to grant a writ of mandamus to compel a trial judge to sign a bill of exceptions, if the record discloses facts which justify the issuance of the writ; but where an appellant obtains a grant of time in which to file a bill of exceptions and the trial judge declines to sign the bill of exceptions because it was not presented to him until after the expiration of the time allowed, the appellate court will not grant the writ of mandamus. Blanton v. Tennessee C. Railway Co., 4 Tenn. App., 335.

██ In the instant case, the writ of mandamus must be denied for the further reason that the application was not seasonably made.

"An application for a writ of mandamus (to compel the Trial Judge to sign a bill of exceptions) must be seasonably presented, negativing any want of diligence on applicant's part." 4 Corpus Juris Secundum, Appeal and Error, page 1390, citing Hill v. Laughlin, 17 Tenn. App., 367, 67 S. W. (2d), 568.

Although, according to the averments of appellant's petition, a bill of exceptions was presented to the trial judge on April 10, 1936, and he then declined to sign it, the application for the writ of mandamus was not presented to this court until February 23, 1937.

The transcript of the technical record was filed in this court on October 22, 1936. The appellant's assignment of error and petition for mandamus (all in one document) with an unsigned bill of exceptions exhibited therewith, was filed with the clerk of this court on November 9, 1936, but was not called to the attention of the court until the case was reached for hearing on the regular call of the docket on February 23, 1937, when it was for the first time presented to the court by appellant's counsel. This was, under the facts disclosed, an unreasonable delay, which would be of itself sufficient to repel the petitioner. State ex rel. v. Maiden, 110 Tenn., 487, 490, 75 S. W., 710.

██ ██ However, in calling attention to the matter of delay in making the application for the mandamus, we do not mean to leave the inference that if such application had been made promptly after the trial judge declined to sign the bill of exceptions on April 10, 1936, the writ could have been lawfully granted, for it would have appeared from the record that the bill of exceptions had

been signed by the judge and filed by the clerk after the expiration of the time granted, and it is well settled that contents of a bill of exceptions cannot be considered for any purpose by the appellate court unless it affirmatively appears that it was authenticated by the trial judge and filed with the Clerk within the time allowed by law. See Scopes v. State, 152 Tenn., 424, 427, 278 S. W., 57, and other cases cited in Cosmopolitan Life Insurance Company v. Woodward, 7 Tenn. App., 394, 402.

The writ of mandamus "will not be granted in any case where the court can see that it would be useless." Cantrell v. Golden, 120 Tenn., 204, 205, 109 S. W., 1154, 1155.

The petition of appellant Mary Elizabeth Stargel for the writ of mandamus is denied and dismissed.

In the absence of a bill of exceptions preserving the evidence heard below, this court will presume that the judgment, or decree, of the trial court in a divorce case was based upon proper and sufficient evidence. Goodman v. Goodman, 127 Tenn., 501, 155 S. W., 388.

But the rule just stated presupposes a statement of sufficient cause or causes of divorce in the bill or petition. The Code, section 8430, provides that the bill or petition in a suit for divorce "shall set forth particularly and specifically the causes of the complaint, with circumstances of time and place, with reasonable certainty."

In this state, the causes for divorce are prescribed by statute, and the courts have no power to grant a divorce except for the causes thus prescribed. Russell v. Russell, 3 Tenn. App., 232, 238.

And the court is without jurisdiction to grant a divorce in the absence of an appropriate pleading containing averments of facts which would, in law, constitute a cause or causes of divorce. And, by reason of section 8430 of the Code, supra, it is not sufficient to charge "cruel and inhuman treatment or conduct" in the language of the statute, without setting forth the specific acts or conduct of the defendant complained of, with circumstances of time and place. Beard v. Beard, 3 Tenn. App., 392, and other cases there cited. See, also, notes to section 8430 in Williams' Annotated Code.

Through her first and second assignments of error, appellant asserts that the circuit court erred in granting complainant a divorce from the defendant upon charges in the bill which were fully denied in the answer, and which, if proved, would not entitle complainant to a divorce.

The complainant's averments in his petition are as follows:

"That he and defendant are both residents of Davidson County, Tennessee; that on September 14, 1931, they were married in Nashville, Davidson County, Tennessee, and have resided here ever since.

"That for the first three months after their marriage, the complainant and defendant rented rooms at 237 Treutland Street from Mrs. Neely. The defendant would not keep her apartment clean and tidy. She would make complainant cook his own meals; while living here the defendant would be gone from home nearly every day, on one occasion defendant was gone from home several days. The defendant was always nagging complainant, would curse him and call him up at his work and abuse him on the phone. Mrs. Neely was forced to ask complainant to give up the rooms on account of the other part of the house being disturbed by the defendant's constant nagging and fussing and also because defendant would not keep her apartment clean.

"The complainant next moved to 1511 Fatherland Street and lived there about six months, then defendant went home of her own accord and stayed with her mother and father. The defendant was gone away from her husband about a month during this time defendant refused to live with complainant.

"The defendant came back to complainant and they lived together about six months. During this time defendant would not attend to her household duties such as keeping the house clean and cooking complainant's meals. The defendant went back to her mother and father and stayed away for two months.

"The defendant asked complainant to take her back. This complainant did. The complainant and defendant rented rooms on the White's Creek pike, they lived together here several months. During this time defendant would not clean the rooms or cook complainant's meals. The defendant used offensive language to such an extent, that the people asked for their rooms. On June 25, 1935, the complainant and defendant separated and have been separated ever since.

"The complainant will further show the Court that he and defendant have a baby boy three years old. That the baby is now living with its mother, the defendant. Complainant pays into the Juvenile Court the amount of $4.00 a week for the child's support. The defendant refused to allow complainant to have custody of said child at any time and also refuses to allow the child to call the complainant daddy or to go riding with him.

"The complainant will further show the Court that the defendant is constantly riding around in an automobile with one Mr. Frank Henderson and tells complainant's friends that if she had a divorce she would marry the said Mr. Frank Henderson.

"Complainant will further show the Court that he and defendant separated in Davidson County, Tennessee, on the day and date aforesaid, and since that time they have not lived together as man and wife.

"Complainant avers that he at all times has been a loyal and dutiful husband to defendant and has given no just cause to mistreat him as she has. Complainant therefore charges:

"That the defendant is guilty of such cruel and inhuman treatment or conduct toward complainant as renders it unsafe and improper for him to cohabit with her."

Do the averments of the petition disclose such cruel and inhuman treatment or conduct on the part of the defendant wife toward the complainant husband as renders their cohabitation unsafe and improper? Code, section 8427, subsec. 1.

The Acts of 1919, chapter 70, carried into the Code as part of section 8427, supra, provided that, "It shall be a cause of divorce from the bonds of matrimony that the wife is guilty of such cruel and inhuman treatment or conduct toward her husband as renders it unsafe or improper for him to cohabit with her." Section 1.

Prior to the act of 1919, supra, it was held in Gardner v. Gardner, 104 Tenn., 410, 412, 58 S. W., 342, 343, 78 Am. St. Rep., 924, that "cruel and inhuman treatment, within the meaning of the statute, is not confined to acts of personal violence, but includes such treatment as endangers the wife's health and renders cohabitation intolerable."

The case of Parks v. Parks, 158 Tenn., 91, 11 S. W. (2d), 680, 681, was a suit for divorce brought by the husband under the act of 1919, supra, and in that case the court said that "it is not likely that the statute of 1919 was enacted merely to protect a husband from physical violence at the hands of his wife;" that "having due regard to the character, the degree of refinement and sensibilities of the parties involved, as may be developed in the evidence, we can see no reasonable ground for giving to the statute of 1919 any fundamentally different construction or application than has been given to the similar provision for the protection of the wife."

In the same opinion (Parks v. Parks, supra) the Court quoted with approval from 19 C. J., pp., 49, 50, as follows:

"The modern doctrine is that any unwarranted conduct by either spouse which causes the other mental suffering of sufficient degree constitutes such cruelty as will authorize a divorce, as where a wife renders her husband's living with her unbearable by bemeaning him and refusing to attend to her household duties, or by wantonly assailing his character and demanding his expulsion from membership in a fraternal organization to which he belongs."

It is seen that, among other things, complainant avers in his petition in the instant case that defendant would curse complainant, that she would call him up at his work and abuse him on the phone; that defendant's constant nagging and fussing so disturbed the occupants of other rooms in the house occupied by complainant

and his family, that complainant's landlord, because of this, and also because defendant would not keep her apartment clean, asked complainant to give up the rooms; that complainant rented rooms in another house (on the White's Creek Pike), but at this latter place defendant "used offensive language to such an extent that the people asked for their rooms;" that defendant is constantly riding around in an automobile with another man, and tells complainant's friends that if she had a divorce she would marry the other man.

We are of the opinion that the acts and conduct of the defendant thus described in the petition, together with her persistent refusal to attend to her household duties and her frequent absences from complainant's home for long periods of time, would cause any normal man a degree of mental suffering which would be unendurable and would constitute a cause of divorce within the contemplation of the statute. Appellant's first and second assignments of error are therefore overruled.

Appellant's third (and last) assignment is that the trial court erred in granting defendant the custody of her minor child, a boy (three years of age), when she had not asked for it in her answer.

This is a very unusual complaint to come from a mother. Not having the proof before us, we must assume that the proof satisfied the trial judge that the custody of this child of tender years would be best subserved by leaving it in the custody of its mother and requiring its father to pay $4 per week for its support. The record discloses no reason to disturb the decree in this respect, and appellant's third assignment is overruled.

It results that the decree of the circuit court is affirmed, and the cause will be remanded to the circuit court of Davidson county to remain on the docket of that court for such future orders and decrees, if any, as may be proper in the judgment of that court with respect to the custody and support of the minor child of the parties.

The costs of the appeal will be adjudged against the appellant Mary Elizabeth Stargel.

Crownover and Felts, JJ., concur.