PAGE *et al. v.* TURCOTT.

(Nashville, December Term, 1942.)

Opinion filed January 9, 1943.

HANOVER & HANOVER and L. J. MONTEVERDE, all of Memphis, for complainants.

JOHN T. SHEA, SAM TAUBENBLATT, and HARRY C. PIEROTTI, all of Memphis, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

John Joseph Turcott died intestate in Shelby County, February 3, 1942. The defendant is his widow, who was duly appointed and qualified as administratrix of his estate. John Joseph Turcott and the defendant were married in Tipton County November 17, 1935, and lived as man and wife until his death.

Complainants are sisters and collateral heirs of John Turcott, who challenge the validity of this marriage and assert the right to inherit the estate.

The bill, filed May 4th, 1942, alleges that the defendant had been formerly married to one Drummond Hughes, against whom she filed a bill for divorce in the Circuit Court of Shelby County November 16, 1927, and was granted a decree on the 23rd of December thereafter, —more than fourteen years before the filing of the bill herein. The bill charges that this decree of divorce was void and that the subsequent marriage of John Turcott, deceased, to the defendant was, therefore, invalid and that defendant never became the legal wife of the deceased, and has no valid claim as his wife on his estate.

The challenge of the decree of divorce is on two grounds:

First, that the allegations of the bill for divorce were insufficient to confer upon the Court jurisdiction, in that (1) the causes of complaint were not set forth, with such circumstances of time and place and with such reasonable certainty as is required by Code, Section 8430; and that, more specifically, (2) sufficient facts were not alleged to show that the abandonment and non-support alleged in the bill for divorce (being the ground on which it was granted) was "premeditated, intended or wilful," or otherwise within the demands of the statute.

Second, that the Special Judge shown by the record to have granted the decree of divorce was without legal authority to act because (1) the minutes do not recite the facts touching his election in compliance with the statute, or that (2) the regular Judge was absent or disqualified; or (3) that the Special Judge was qualified to act, or (4) that he took the prescribed oath.

The Chancellor sustained four of eleven grounds of demurrer, dismissed the suit, and complainants appealed.

General grounds of demurrer were that, (1) complainants had no rights in the estate of John J. Turcott at the time of his death, and had none that were prejudiced at the time of the decree of divorce and cannot attack the decree collaterally; and that (2) the deceased husband would have been estopped by laches and acquiescence from denying the validity of said decree and his heirs at law are likewise estopped.

Challenging the charge of the jurisdictional insufficiency of the pleadings, the demurrer pled (1) that the petition for divorce set forth particularly and specifically the causes of the complaint with reasonable certainty such circumstances of time and place as the law requires;

(2) that even though a jurisdictional fact ·may not be affirmed upon the record, it will be presumed upon a collateral attack that the Circuit Court, a Court of general jurisdiction, acted with authority and its judgment is valid; and (3) that, even though the petition contained a defect in form or substance, such defect was cured by the decree, if on the trial the issue required proof.

To so much of the bill as challenged the authority of the acting Judge, the demurrer pled, (1) that the right, title or authority of a Special Judge who presided in a cause is not subject to attack in a collateral proceeding; (2) that the bill contains no allegation that the Judge did not in fact have due authority to act, and, in the absence of any allegation or showing to the contrary, his authority will be presumed; and (3) that incompetency, lack of authority and defects in election of a Special Judge are waived by failure to object in the trial court.

The two grounds of attack are pressed upon our attention by appellants through numerous assignments and earnest and extended arguments are presented by able counsel for both parties.

██ The jurisdiction to grant a divorce is statutory and it is well settled that, as an essential of jurisdiction, a petition for divorce must contain allegations setting "forth particularly and specifically the causes of the complaint, with circumstances of time and place, with reasonable certainty," as required by statute. Code, Section 8430. Each petition must be tested by this statute and must meet its requirements. We look then first to the petition which is herein attacked for alleged insufficiency, bearing in mind that the divorce was granted for this statutory cause: "That he has abandoned her, or turned her out of doors, and refused or neglected to provide for her." Code, Section 8427. Was this

cause "set forth particularly and specifically . . . with circumstances of time and place, with reasonable certainty"?

The petition first sets out the names and residence in Shelby County of the parties, for more than two years before the filing of the bill, and next their marriage, in April, 1927. The petition then proceeds:

(1) "Complainant further shows to the Court that from the beginning of their marriage, the defendant has constantly made false and malicious accusations against her, and constantly intimated and insinuated she was meeting other men.

(2) "She further shows to the Court that during the time they lived together as husband and wife, the defendant did not support her, and she was forced to work from time to time to meet their bills.

(3) "She further shows that on the 14th day of July, 1927, the defendant grew angry over some trivial matter, and left her; that he has not since been back to live with her, and has not contributed anything whatsoever toward her support.

(4) "She further shows that the defendant was extremely jealous without any cause whatsoever, and made her life very unhappy by his constant false and malicious accusations.

(5) "Complainant therefore charges that the defendant has been guilty of such cruel and inhuman treatment or conduct towards her.

(6) "She further charges that the said defendant has abandoned her and turned her out of doors, and has refused and neglected to provide for her; that said abandonment was without reasonable cause, and occurred in Shelby County, Tennessee.

(7) "She further shows that the defendant is working for the Southern Motors Car Co., as a salesman, but she is not advised as to his earnings; that she has no fund or means of support, except her small salary, out of which she has to support her child by a former marriage, and that she has no property or funds to defray the expenses of this action."

We have numbered the foregoing paragraphs for convenient reference. It will be observed that paragraphs (1), (4) and (5) state and relate to charges of cruel and inhuman treatment. Since the decree was not granted on this ground, we need consider only whether or not the charge of abandonment and nonsupport is sufficiently set forth in paragraphs (2), (3), (6) and (7). It will be seen that in paragraph (6) the charge is made, in the language of the statute, that the "defendant has abandoned her and turned her out of doors, and has refused and neglected to provide for her"; and the petition adds the charge that "said abandonment was without reasonable cause," thus negativing this defense, "and occurred in Shelby County, Tennessee."

We understand the specific insistence of appellants to be that the bill failed to charge that the said abandonment and non-support of which the said complainant in said cause complained, was "premeditated, intended or wilful," to use the language of the original bill herein. Is it essential that the petition show affirmatively that the abandonment of and failure to provide for the wife was "premeditated, intended, or wilful"?

█ █ Counsel apparently mistakenly seek to apply to the cause alleged, and made the basis of the decree in the instant case, of abandonment and failure to support, being the cause set out in subsection (3) of Code, Section 8427 (Shannon's Code, section 4202), expressions in

cases dealing with the cause of wilful or malicious desertion, found in subsection (4) of Code, Section 8426. Certainly, when the relief sought is for this cause, it must be charged as well as proved that the desertion was intended and wilful. And, when this is the cause relied on, or when the charge is cruel and inhuman treatment, under subsection (1) of Code, Section 8427, not only must the allegation be made "in words fully equal and definite in their meaning" to those of the statute (*Stewart* v. *Stewart*, 32 Tenn. (2 Swan), 591, 592; *Saillard* v. *Saillard*, 2 Tenn. Ch. App., 396), but the requirements of particularity and specification, with circumstances of time and place, Code, Section 8430, must be observed with particular care. But, even in these cases, "reasonable certainty" only is exacted, not "mathematical certainty," remembering that the manifest purpose of this statute is to ensure "notice to the defendant in order that he might defend intelligently." *Brown* v. *Brown,* 159 Tenn., 551, at page 553, 20 S. W. (2d), 1037, at page 1038; *Baeyertz* v. *Baeyertz,* 171 Tenn., 190, 101 S. W. (2d), 689.

We think a degree of distinction is to be taken between petitions on the grounds above mentioned and one grounded on the cause set out in subsection (3) of Code, Section 8427, of abandonment and refusal or neglect to provide. The distinction is to be found in the nature of the charges as related to the necessity for notice. In the one case the charge is an affirmation of something that has been done; in the other a negation, a charge of an omission or failure to do. Obviously, a charge of cruel and inhuman treatment permits of particularization of circumstances and place and calls for specifications as an essential of adequate notice in a sense and degree neither possible nor demanded when the charge is a failure to provide support. When the peti-

tion charges, as in the instant case, that "during the time they lived together as husband and wife, the defendant did not support her, and she was forced to work from time to time to meet their bills"; and further that "on the 14th day of July," a time thus fixed, the defendant "left her," and "has not since been back to live with her, and has not contributed anything to her support"; and, again, that "she has no funds or means of support, except her small salary, out of which she has to support her child by a former marriage"; and when she "further charges", in the language of the statute, that he has "abandoned her and turned her out of doors, and has refused and neglected to provide for her, and that said abandonment was without reasonable cause, and occurred in Shelby County, Tennessee," it would seem that nothing further could be said to be essential to convey all reasonable notice to the defendant of what he is called on to answer and defend. While, if the charge be cruel and inhuman treatment, particulars of just when and how and under what circumstances the acts were committed might well be stated and demanded; if the charge be abandonment and failure to provide, there is little more to be said than that he had left her some months before the filing of the bill and had not returned, and has not contributed anything to her support, and that she is forced to support herself and child. These are definite charges of a definite failure and refusal, covering a definitely named period and place. The essential facts are set forth.

Of the many cases cited on the briefs, we find but one containing an expression which appears to give any degree of support to the view that a petition based on the cause of abandonment and non-support should charge

that the abandonment and neglect to support was "premeditated, intended or wilful."

In the course of the opinion of BARTON, J., in a case styled *E. W. M.* v. *J. C. M.*, decided by the then Chancery Court of Appeals at Knoxville in 1897 and reported in 2 Tenn. Ch. App., 463, in which the petition for divorce was sustained on charges of cruel and inhuman treatment, the Court referred to other charges made in the petition, among them that of failure and refusal to provide, etc. Touching this charge the Court expressed doubt as to the sufficiency of the allegation because, in connection with this charge, the bill stated that, "It is but just to say that defendant's health became in the meantime impaired, and this furnished some palliation for his failure to support and maintain his family," etc. The Court remarked that the statutory charge thus modified did not "show an intended and premeditated abandonment and refusal and neglect altogether to provide," but the Court added, "however, we may say that it is unnecessary to decide whether these allegations, taken in connection with others we have referred to, would on this point be sufficient, as the proof at least clearly fails to sustain this allegation." It may well be that when the charge of abandonment and neglect to support is coupled with an explanation such as this, excusing this conduct or omission of the defendant, the intention which otherwise must necessarily be presumed would be negatived. Enough has been said to show that this statement in the course of this opinion is entitled to no weight as authority for the view that a bill for divorce based on alleged abandonment and non-support must affirmatively allege that the abandonment and non-support was premeditated and wilful. We have no hesitancy in holding

with the Chancellor that the allegations of this petition. were sufficient to confer jurisdiction.

The second ground of collateral attack on the decree of divorce is directed and confined to the proposition that the minutes of the Court disclose that the decree was granted by a Special Judge, but they contain no recital of the details or facts of his election and qualification set forth in the provisions of the statute governing the election of special judges. The insistence appears to be that this omission from the minute entry showing the election of the Special Judge renders the decree void. We quote from the records of ''The Circuit Court of Shelby County, Tennessee, Division One, December 19, 1927.''

''Court met pursuant to adjournment whereupon Hon. SAM TAUBENBLATT was elected Special Judge to sit in place of Hon. M. R. PATTERSON, Judge.''

And, further, the following pertinent parts of the record of the decree:

''Pleas, at a term of the Circuit Court of Shelby County, Division I, State aforesaid, begun and held at the Court House in the City of Memphis on Monday, November, 1927, the same being the third Monday in November, 1927, present and presiding, Hon. SAM TAUBENBLATT, Special Judge, etc., also present R. L. McGaughey, Clerk of said Court, and W. S. Knight, Sheriff of Shelby County, when the following proceedings were had, to-wit:

''Entered December 23, 1927
''Minute Book 82, Page 556

''Grayce Werkhoven Hughes
    vs.    #25518 R. D.    }Decree of Divorce
Drummond Hughes

''This cause coming on to be heard on this 23rd day

of December, 1927, before Honorable Sam Taubenblatt, acting Judge of Division One of the Circuit Court of Shelby County, Tennessee, on the bill of complainant, the return of the sheriff showing personal service on the defendant and *pro confesso* heretofore taken against the said defendant.

"And it appearing to the court from the testimony of complainant and of witnesses Mrs. J. W. Blaylock and Mrs. D. F. Blaylock and Mrs. L. M. Reed examined in open court that the charges contained in complainant's bill are true, that the defendant has abandoned complainant and has turned her out of doors and has refused and neglected to provide for her, and that said abandonment was without reasonable cause and occurred in Shelby County, Tennessee,

"It is, therefore, ordered, adjudged and decreed that the bonds of matrimony heretofore subsisting between complainant and defendant be and the same are hereby dissolved, annulled and for nothing held."

In the first place, we find no charge in the bill before us that the Special Judge who heard the divorce suit was not in fact duly and regularly elected and qualified, under the conditions and in the manner provided by the statute, and it may well be doubted that the issue has been properly presented. But, waiving this preliminary question, it is well settled that the minutes of a court of record import absolute verity and the recitals therein contained are not subject to collateral attack, except for defects appearing on the face of the record. It is not here insisted that anything on the record shows that the election of the Special Judge was not in all respects in conformity to the governing statutes. While it is true that the minute entry recites a conclusion only, this recital precludes collateral attack.

■ In *Sloan* v. *Sloan,* 155 Tenn., p. 422, 428, 295 S. W., 62, 64, a divorce case, Mr. Justice McKinney re-stated and re-affirmed the rule that, ''Where the court has jurisdiction of the parties and of the subject-matter,'' as we hold to be true in this case, ''it is well settled by the decisions of this court that every reasonable presumption will be indulged in support of the regularity of the proceedings, and the validity of the judgment of courts of competent general jurisdiction.''

He also, much in point here, in response to the claim that the decree in that case did ''not sufficiently set forth the issues and the decision of the Court thereon,'' calls attention to Code, Section 10586 which provides that, ''decrees need not recite the facts upon which they are based, but only the conclusions to which the court has come.'' The minute entry before us is a form of decree and this statute has application, the complaint here being that this minute entry does not recite the facts upon which it is based, but the conclusion only.

■ ■ The Circuit Court of Shelby County is, of course, one of the courts of record, ''the proceedings and judgments of which import absolute verity,'' 14 Am. Jur., p. 250, citing cases. As defined by Blackstone, ''a court of record is that where the acts and judicial proceeds are enrolled in parchment for a perpetual memorial and testimony, which rolls are called the record of the court and are of such high and supereminent authority that their truth is not to be called in question.'' In modern days the proceedings are entered and preserved in ''minute books'' which Mr. Gibson declares are ''the most important of all the court books and should be bound well enough to last a hundred years.''

Counsel for appellants press strongly upon us quotations from the opinion in *Low* v. *State,* 111 Tenn., 81,

78 S. W., 110, wherein the importance of observance of the legal requirements governing the election of special judges is stressed, and directory suggestions are made for guidance in these cases, including the form of the record entries of the action taken. Aside from the fact that these observations were not required for the decision of that case, it is apparent that it was not the intention to announce an inviolable rule, a failure to observe which would invalidate the election, or open the way for collateral attack on the proceedings. And in the later case of *Harness* v. *State*, 126 Tenn., 365, 369, 149 S. W., 911, 912, these expressions in the *Low Case* were thus explained and limited in the opinion by Mr. Justice GREEN:

"Inasmuch as the practice of electing special judges had been extremely loose and informal, and the results sometimes objectionable, it was sought in the *Low Case*, by this court, to point out the proper practice to be followed, under the statute, in the selection of special judges, that such elections might be invested with a becoming dignity and regularity and a proper record made thereof. Much was said in that case, not necessary for the determination of the particular question before the court, with a view of emphasizing the importance of electing and qualifying special judges in an orderly manner, according to the provisions of the statute. The court did not mean to say, however, that it would reverse cases tried by such judges for every variation from the proper practice in their election."

If, as here indicated, the failure to observe the procedure outlined in the *Low Case* would not call for a reversal, clearly, the omission from the record entry of a recital of such observation would afford no ground

for holding the proceeding void and subject the decree to collateral attack.

We find it unnecessary to consider other questions discussed at length on the briefs, in view of the conclusions we have above indicated. We find no error and the decree of the Chancellor is affirmed.