STATE *ex rel.* FRENCH *v.* FRENCH.

(*Nashville,* December Term, 1944.)

Opinion filed June 30, 1945.

HOMER B. WEIMAR and ANDREW TANNER, both of Nashville, for relator.

Z. T. OSBORN, JR., of Nashville, for respondent, appellant here.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a *habeas corpus* suit involving the custody of a minor child. From a judgment in favor of the relator, the respondent has appealed.

The relator, Mrs. Mae French, and the respondent, Jerome A. French, were divorced on her suit by decree of the Court of Common Pleas at Cleveland, Ohio, on December 18, 1943. Both parties were residents of Ohio at that time, both were properly before the court, and

both represented by counsel. In this decree the custody of the minor child here involved was awarded to the relator.

It appears that the petition for divorce was filed in the Ohio court on March 12, 1943, and there was a preliminary order restraining the respondent from any interference with the child, then in the custody of his mother. Disregarding this order, the respondent fled from Ohio with the child August 22, 1943. He located in Nashville, assumed the name of Grant, but was finally discovered to be in Nashville by the relator. Thereupon she filed petition to recover possession of the young boy.

An appeal was taken from the judgment in the Ohio court to a Court of Appeals in that state. The judgment of the lower court was affirmed on April 24, 1944. It was agreed at the trial below that the time in which an appeal could be taken to the Supreme Court of Ohio had expired.

This cause was finally heard in the Criminal Court of Davidson County on June 14, 1944. An application was made for a continuance by the respondent but this application was overruled by the court. We think it will be obvious from our further discussion of the case that the refusal of the trial judge to delay the hearing was well within his discretion. The evidence which the respondent thought he could procure if further time was granted would not, in our view, have affected the result.

Before proceeding with this discussion, it seems proper to reiterate a former expression of this Court embodying principles of law that are here controlling:

"We are of the opinion that as between the parents, parties to the litigation, the decree of the foreign court awarding the custody of the children is *res adjudicata*, subject, as between those parties, to modification only

by the court that granted the decree. [Citing cases.] However, we think this doctrine should be understood with the qualification that, in case of the removal of the child to another state, even within the custody of the parent to whom that custody had been awarded by the foreign decree of divorce, the courts of the state to which the removal has been effected will have the power, on a change of circumstances showing such course essential to the best interests of the child, to make a new disposition of the child. [Citing cases.]'' *Kenner v. Kenner*, 139 Tenn. 211, 223, 201 S. W. 779, 782, L. R. A. 1918E, 587.

The foregoing is in accord with the authorities generally. See cases cited in that opinion and many others collected in Notes, 20 A. L. R. 822; 72 A. L. R. 448; 116 A. L. R. 1306.

On the hearing below the relator introduced proof, her own and that of others, tending to show that her financial condition had not changed unless for the better nor had her affection for the boy lessened since the divorce decree. That his environment and advantages in Ohio would be the same as at the time of the decree. The relator and her witnesses went into some detail concerning her income, disposition toward the child, and the character of the surroundings that would be afforded him in her custody. All this testimony was highly favorable and among the witnesses was a daughter of the respondent, a young lady about eighteen years of age. She spoke in the highest terms of her step-mother. It appeared that the relator was a widow with children and the respondent a widower with children when they were married.

Counsel for respondent cross-examined the relator and began asking her about incidents in her past life. We understand the court to have excluded this testimony

insofar as it reflected on her fitness as a custodian of the child, considering this matter foreclosed by the Ohio judgment. He ruled, however, that she might be asked about such things insofar as they reflected on her credibility as a witness in his court, but counsel was not per-mitted to go very far with this line of questions. From what he developed and his statements, it does not seem to us that counsel would have brought out anything very material by way of impeachment of the witness if he had been given full latitude. He was embodying charges in his questions which tended to reflect on the woman and she would not likely have admitted any of them.

After the relator had practically closed her evidence, a lengthy and spirited argument arose as to the scope of the proof which respondent would be allowed to intro-duce. The court, after a patient hearing, ruled as fol-lows:

"Well, I have considered all these matters that have been brought before me and I am of the opinion that the inquiry at this time is limited to the proposition as to whether or not the status or condition of the petitioner (relator) in this case has changed since the rendition of the Ohio decree and I will limit the evidence to that."

▆▆ We think this rule was too narrow. We think evidence concerning any change of circumstances reflect-ing on the boy's welfare was competent—whether change in his father's status or condition, his mother's status or condition, or his own status or condition. Although not agreeing with the learned trial judge in so restricting the evidence, we cannot see that any harm was done.

The respondent excepted to the foregoing ruling and tendered witnesses whom the court declined to hear after a statement by counsel of what their testimony would be. No proof therefore was introduced by respondent,

judgment was entered in favor of the relator, and appeal taken by respondent to this Court. The child was turned over to the relator but a bond was exacted from her requiring the child's production if it was so ordered by this Court.

A strong argument for reversal has been made in this Court but we are not disposed to interfere with the result reached below. These cases involving parental affections are always painful to consider. We can only do what seems to us best.

Bearing in mind the rule quoted from *Kenner* v. *Kenner, supra,* we think that we should accredit the judgment of the Ohio courts who had jurisdiction of these parties, since it does not appear to us that there was any material change of circumstances between the time of the decree of divorce and the time of the hearing below. The divorce was decreed in December, 1943, and custody of the child awarded to the mother. The trial below was had in June, 1944—an interval of six months. There was no time for much change.

The evidence which the respondent proposed to introduce and the trial judge did not hear was to the effect that this boy in his custody was well cared for, happy, healthy, and doing well in school. That his moral surroundings were excellent and his educational opportunities good.

Respondent had been in Nashville several months when the divorce case was heard in Ohio. We take it during that time he had become settled here, and it is likely all the things he offered to show in the trial below might have been shown when the divorce case was heard in Ohio. However this be, the evidence in this record indicates that the boy will have the same care and the

same opportunities for happiness, health, education and moral training in the custody of his mother.

We do not think there was error in the action of the trial judge in ruling out testimony as to incidents in the life of the relator prior to the divorce. No reason appears why these matters were not brought to the attention of the Ohio court when the right to the child's custody was in controversy there. Relator was adjudged in that case to be a suitable person to care for the child and "the estoppel of a judgment or decree extends to all matters material to the decision of the cause which the parties, exercising reasonable diligence, might have brought forward at the time." *Jordan* v. *Johns*, 168 Tenn. 525, 537, 79 S. W. (2d) 798, 802, and cases cited. As before stated, the trial judge did permit some investigation along this line as affecting the credibility of relator.

Error is assigned upon the action of the trial judge in refusing to hear the testimony of the young boy. While the court might very well have heard the boy, we doubt that he would have been particularly influenced by such testimony. The boy had been for some months in the custody of his father and being a child of tender years was naturally under the dominance of the father at the time of the hearing.

In the Ohio judgment awarding custody of this boy to his mother, it was further ordered "that the matter of the future care, custody and control of the minor child, William Christopher French, be and the same is hereby certified to the Juvenile Court of Cuyahoga County for further proceedings according to law."

It thus appears that the matter of this boy's custody is not foreclosed but is open to investigation by the juvenile court in Ohio and that court can make any or-

der which changed conditions and the welfare of the child require. The boy is at present nine years of age and will be ten within a few months according to statements of counsel. It seems under Ohio statutes the wishes of a child, if ten years old, as to which parent shall be his custodian are given special consideration.

The way is therefore open to the respondent to make application to the juvenile court in Ohio for a change in the boy's custody. If it be said that the father is in contempt of the Ohio courts, nevertheless we think he might be heard if the welfare of the boy so dictated. The Ohio courts would not likely penalize the boy for the father's contumacy. *Sheehy* v. *Sheehy,* 88 N. H. 223, 186 A. 1, 107 A. L. R. 635; *People ex rel. Wagner* v. *Torrence,* 94 Colo. 47, 27 P. (2d) 1038. Regardless of the father's standing in Ohio, this record discloses that the boy has many friends in Nashville and some of these no doubt would appear as his next friend there if his interests demanded.

As said by another court, "it is not proper to assume that the courts of this state are pre-eminently qualified to determine the order which will best promote the welfare of the child or children whose particular case is being considered. The courts of other states are guided by the same principle in determining questions involving the custody of minors, and such courts are as well qualified to decide such questions as are the courts of this state." *In re Penner,* 161 Wash. 479, 297 pages 757, 758.

In a case resembling the one before us, where the custody of a child had been previously determined by the California courts, and the same controversy arose in the Washington courts, to which state the child had been brought, the supreme court of the latter state said:

"If we should not allow the California court, which originally had jurisdiction of the parties, to determine the custody of the child under the changed circumstances, we would encourage the taking of children from one jurisdiction to another, and thus invite interminable litigation over the custody of minor children, and by thus placing the custody of minors in an inchoate condition would seriously interfere with the welfare of children.

"Under the circumstances here shown the interlocutory decree of January, 1930, the final judgment of divorce of January 9, 1931, and the order of June 26, 1936, in the case of *Burns* v. *Burns,* No. 79279 in the superior court of Los Angeles county, Cal., relating to the education and custody of this child, shall be given full faith and credit until modified by that court, or unless a further change in circumstances or subsequent events require a different treatment." *In re Burns,* 194 Wash. 293, 304, 305, 77 P. (2d) 1025, 1030.

We have a like feeling about the case before us. The boy has been in the custody of his mother for about a year now, will shortly be ten years of age, and by comparison of his residence and custody in the two places will be in a position to express his preferences and his reasons for the same. If he at that time wishes to return to his father's custody, such an expression will be voluntary and the juvenile court in Ohio will no doubt gravely consider his wishes.

The judgment of the court below is affirmed.