## CLOTHIER v. CLOTHIER—232 S. W. (2d) 363.

Eastern Section. March 14, 1950.

Rehearing denied April 25, 1950.

Petition for Certiorari denied by Supreme Court, July 15, 1950.

534

Francis W. Headman, of Knoxville, for appellant.

Donaldson, Montgomery & Kennerly, of Knoxville, for appellee.

McAMIS, J. In resisting a motion to strike the assignments of error because not filed in time, counsel for appellant has filed an affidavit stating that he confused the rule of the Supreme Court with the rule of this court providing that assignments must be filed within 25 days after the transcript is filed. We find that the violation of the rule was not wilful and overrule the motion.

This is a divorce action severing the marital relation between the parties for the second time, the wife, defendant-appellant in the present suit, having married one L. D. Johnson three days after the first divorce de-

cree was entered and divorced him in Kansas a few months later. Mrs. Clothier, following that divorce, returned to Tennessee and in September, 1947, the parties to this action were remarried.

The first divorce suit was filed by Mrs. Clothier and resulted in a decree in her favor on the ground of cruel and inhuman treatment. Mr. Clothier filed an answer but did not contest that suit. The decree by agreement divided the custody of Glenn Warren Clothier, only child of the parties, who was born September 24, 1936.

At the same time, the court approved an agreed settlement divesting all rights of the wife in property of the husband except certain personal property, which was awarded the wife as alimony, and further providing:

"Lavon is to receive a total of $12,500.00 as a complete money settlement of all her demands of every kind and character against Charles for alimony, maintenance, homestead or dower or any other claims whatsoever."

As contemplated in the agreed settlement the decree ordered Mr. Clothier to pay his wife, Lovan, $4,000.00 in cash "and to execute a note to her for the balance of *said alimony settlement,* which balance will be the sum of $8,500.00, to be paid as set out in said agreement . . . and he is further directed to execute a trust deed . . . to secure the payment of said balance of $8,500.00." (Italics ours.)

The agreement provided for the payment of $50.00 per month with interest on the $8,5000.00 note and that it was to be secured by a second mortgage on a building in Knox County recently constructed which Mr. Clothier owned and in which he conducted a filling station.

Clothier procured a bank loan in the sum of $19,000.00 to pay for construction of the building and to raise the

$4,000.00 in cash due his wife under the settlement agreement. The Chancellor found that this property was worth $22,000.00 and neither party has assigned error on that finding. There is no showing that Clothier had other property of value.

In the present suit the Chancellor, upon granting the complainant husband a divorce, effected what he considered an equitable settlement of the property rights of the parties growing out of the second marriage. The first mortgage held by the Bank had been reduced to $13,900.00, the $8,500.00 note held by Mrs. Clothier to $7,950.00. The $4,000.00 paid Mrs. Clothier in the first case was treated as alimony in solido and no attempt was made to disturb her right to retain it. It was provided, however, that the $7,950.00 due on the $8,500.00 note should be for nothing held, but, in lieu thereof, Mr. Clothier should pay $50.00 for each month the child should be with Mrs. Clothier as his necessary support until $2,400.00 had been paid. These payments are then to cease altogether. The decree further provided that the child should remain with his mother during the school months and with the father during the summer months.

Mrs. Clothier has appealed insisting the Court erred (1) in granting the husband a divorce and in not granting her a divorce under the cross-bill, (2) avoiding the balance due on the $8,500.00 note, and (3) in attempting to adjudicate the custody of the child notwithstanding his absence from the state.

The insistence that the court erred in granting complainant a divorce, as we understand, is mainly predicated on the failure of the original and amended bills to charge cruel and inhuman treatment in the language of the statute. It was charged that defendant, even

before the first separation and divorce, had become infatuated with Johnson and that, during the second marriage, defendant continually compared complainant to Johnson describing him as a model husband and that, after eloping with Johnson, defendant concealed and had continued to conceal from complainant the whereabouts of his son, forcing him to make expensive but vain trips to find him. The bill then charges: "Your complainant also avers that the conduct of defendant Lavon has been cruel and inhuman in the extreme. She has proved traitor in all obligations of a wife . . ."

This averment includes "cruel and inhuman" carried in the statute, Code, Sec. 8427, but substitutes "in the extreme" for "such . . . as renders cohabitation unsafe and improper". No question is made that the basic facts and circumstances are not averred with the required particularity as to time or place. The insistence is that the court was without jurisdiction because of the failure of complainant to allege a ground for divorce in the language of the statute.

■ As held in numerous cases, including Page v. Turcott, 179 Tenn. 491, 167 S. W. (2d) 350; Russell v. Russell, 3 Tenn. App. 232; Stargel v. Stargel, 21 Tenn. App. 193, 107 S. W. (2d) 520, the courts cannot grant a divorce except upon one of the grounds provided by statute. However, the rule, in respect to pleading, is that it is sufficient if the ground for divorce is well averred in words fully equal to, and as definite as, the words of the statute—that it is not necessary to use the exact words of the statute. Stewart v. Stewart, 32 Tenn. 591; E. W. M. v. J. C. M., 2 Tenn. Ch. App. 463.

■ In Brown v. Brown, 159 Tenn. 551, 20 S. W. (2d) 1037, the court considered the sufficiency of a complaint

to meet the criticism that it failed to aver the facts and circumstances with sufficient particularity as to time and place as distinguished from failure to aver a ground for divorce embodied in the statute. We think, however, the reasoning of that case is applicable. It was said that while proof will not be looked to to supply jurisdictional or other essential requirements of pleadings, a doubt as to the sufficiency may be resolved in favor of the complainant where defendant proceeds in apparent acceptance of the sufficiency of the complaint. And see Page v. Turcott, supra.

In this case, defendant made no question of the sufficiency of the pleading in the Chancery Court and not until her assignments of error were filed in this court was the question ever raised. There is room for serious doubt as to whether cruel and inhuman treatment in the extreme is not equivalent to ''cruel and inhuman treatment . . . as renders cohabitation unsafe and improper.'' This language of the statute has frequently been held to embrace mental suffering such as here shown. Parks v. Parks, 158 Tenn. 91, 11 S. W. (2d) 680; Meeks v. Meeks, 27 Tenn. App. 279, 179 S. W. (2d) 189; Garvey v. Garvey, 29 Tenn. App. 291, 203 S. W. (2d) 912. It is now too late to amend to meet the objection except by ordering a remand and we think such doubt as exists in reference to the sufficiency of the complaint should be resolved in favor of its sufficiency.

We find that there is evidence to support the allegations of the complaint; that the evidence does not preponderate against the finding on the evidence and that the assignments complaining of the action of the court in granting a divorce to the husband and dismiss-

ing the cross-bill are without merit and should be overruled.

■ ■ We are further of opinion there was no error in avoiding the balance due on the $8,500.00. We have italicized above the language of the decree in the first suit which in our opinion stamps it as alimony and not as a property settlement. Although we think the provisions of the decree control, Osborne v. Osborne, 29 Tenn. App. 463, 197 S. W. (2d) 234, if we look to the settlement agreement it is apparent that alimony as well as property of common ownership was in the minds of the parties. Mrs. Clothier was paid $4,000.00 in cash. This was, at least, half the value of any equity that existed in the property and probably greatly in excess of one-half the value of the equity. As we have indicated the language of the decree approving the settlement refers to the $8,500.00 as alimony and, on the whole case, we think the reference accords with the intentions of the parties as nearly as we can determine their intentions. We are satisfied that no injustice has been done Mrs. Clothier giving full consideration to any contributions she may have made in the purchase of the lot and erection of the building. At the termination of the second marriage for her own misconduct, of course, she had no rights in her husband's property. It should be stated also that she received substantially all of the household furniture and a truck which was doubtless as much community property as the building.

■ The purpose of alimony is to provide a means of support for the wife. When the parties remarry the husband's obligations of support are fixed by law and we think the remarriage operates to relieve the husband

of further obligation to make installment payments of alimony. See 27 C. J. S., Divorce, Sec. 240, p. 1000, citing under note 24, Carson v. Carson, 143 Okl. 274, 288 P. 475; Wilkerson v. Hoover, 192 Ark. 337, 91 S. W. (2d) 274. If the rule were otherwise the husband would be onerated with a double liability, i. e., for installments under the prior divorce decree and the obligation to support imposed by law upon the remarriage of the parties.

This brings us to the final question, the power of the Court to determine the custody of the son, now nearly 14 years of age.

The defendant, after filing a plea in abatement in which she denied generally the jurisdiction of the court "over the subject matter of the suit", filed an answer and a cross-bill seeking a decree awarding custody of the child to her "should it become competent".

■ Although the wife and child had moved to California, at least in the absence of proof of a contrary intent or fault on the part of the husband in forcing her to withdraw from the state of his domicile, she retained the domicile of her husband, White v. White, 13 Tenn. App. 622, and the domicile of an infant child, even though the parents have separated, is the domicile of the father. 17 Am. Jur. 626, Domicile, Sections 57, 58; 27 C. J. S., Divorce, Sec. 303, p. 1164; Glass v. Glass, 260 Mass. 562, 157 N. E. 621, 53 A. L. R 1157; Lanning v. Gregory, 100 Tex. 310, 99 S. W. 542, 123 Am. St. Rep. 809. We, therefore, conclude that the domicile of both parents and of the child is in Tennessee. Thus, the only element lacking to give the Tennessee courts unquestioned jurisdiction to control the custody of the child is his physical presence in the State.

 Where there is no outstanding judicial award of custody by a foreign court, the courts are unanimous in holding that even though the children may be physically without the state, power in the court exists to make an award of custody of children domiciled within the state.

The general rule stated above has been applied in a variety of proceedings. In the majority of the cases the question as to the jurisdiction of the court to award the custody of a child domiciled within the state but physically outside it arose in connection with divorce or separation proceedings of the parents.

Where the domicile of both parents was in the state of Missouri at the time the wife filed an action for divorce against the husband although the husband and the infant children of the parties were physically outside the state, it was held in Beckmann v. Beckmann, 1949, 358 Mo. 1029, 218 S. W. (2d) 566, 9 A. L. R. (2d) 428, affirming Mo. App. 211 S. W. (2d) 536, that the Missouri court had jurisdiction to determine the custody of the infant children, since the status as to the custody was a res within the jurisdiction of the court. The court said that since such status was within its jurisdiction it was authorized to deal with it and the judgment awarding custody was a proper exercise of judicial power and therefore valid.

Where both parties to a divorce suit were residents of the state and their child's absence from the state was only temporary and for the convenience of the parties, it was held in Hughes v. Hughes, 1947, 180 Or. 575, 178 P. (2d) 170, that the court had jurisdiction to make an award with reference to custody. Recognizing the general rule that, ordinarily, where the child is out of the

territorial jurisdiction the court has no authority to enter any decree with reference to its custody, the court said that this rule did not apply in the case where both parties resided within the state and the absence of the child was only temporary.

Stating that where both parties are before the court, an award of custody of a child or children without the jurisdiction may be made, the court in May v. May, 1931, 233 App. Div. 519, 253 N. Y. S. 606, added that this may be done merely because the parties are personally before the court, which, by virtue of its control over such persons, may enforce its commands with respect to each. To the same effect is Robinson v. Robinson, 1938, 254 App. Div. 696, 3 N. Y. S. (2d) 882, certified questions answered 254 App. Div. 763, 4 N. Y. S. (2d) 1017, affirmed without opinion 279 N. Y. 582, 17 N. E. (2d) 448.

An unusually well-considered case is Sampsell v. Superior Court, 1948, 32 Call. (2d) 763, 197 P. (2d) 739. It appeared in that case that husband and wife were California domiciliaries and that the wife went to Nevada to obtain a divorce, taking the couple's minor child with her. After residing in that state for the necessary six weeks, she filed an action for divorce and custody of the child, based upon constructive service upon her husband, who remained in California. While this action was pending the husband brought a similar action in California. Thereafter the wife was given a divorce and exclusive custody by the Nevada court. She then made an appearance in the California action through her attorney. By this time she had moved to Utah with the child and married another man, whereupon the husband applied to the California court for custody of the child pending the trial of his action therein. This application

was dismissed for lack of jurisdiction but on a petition for writ of mandamus to compel the court to hear the matter of custody pendente lite the Supreme Court by a divided court granted the writ on the ground that the California court had jurisdiction to determine the custody of a child domiciled in the state, even though it had been living outside the state since before the commencement of the action. In reaching this result the court considered first whether the child was domiciled in California and found that it was on the basis of the determination by the court that both parents were California domiciliaries. It then concluded that this legal connection with the state provided a sufficient basis for jurisdiction, even though the child and the mother were both outside the state. But the court did not stop here. In considering the various theories with respect to the basis for jurisdiction in custody proceedings, it criticized the assumption which underlies all of them that in order to achieve finality in this matter one court at one given time must have an exclusive right to determine the issue, and said that such exclusive jurisdiction was not essential—that jurisdiction may exist in two or more states at the same time.

Similarly, it was held in Heard v. Heard, 1948, 323 Mass. 357, 82 N. E. (2d) 219, by way of dictum, that a child's domicile is that of its father, and that the child continues an inhabitant of the state where its father has always lived, notwithstanding the child's removal by its mother to a foreign state, so as to give jurisdiction to the probate court of the state of the child's domicile of a petition by the father, after the mother has obtained a divorce in the foreign state, to determine the custody of such minor child notwithstand-

ing the child is not within the borders of the state of its domicile. See also White v. White, 1913, 77 N. H. 26, 86 A. 353.

We think our own cases of Kenner v. Kenner, 139 Tenn. 211, 201 S. W. 771, Ann. Cas. 1918D, 752, and Ritchison v. Ritchison, 28 Tenn. App. 432, 191 S. W. (2d) 188, are distinguishable on their facts from the present case. In the Kenner case although certain language of the opinion is to the effect that the physical presence of the child is always necessary to a valid adjudication relative to custody, the Alabama decree which the court sustained was passed by the courts of that State while the mother was there domiciled with the child and that was the determinative question in the case relative to the child's custody. In the Ritchison case, supra, this court affirmed the lower court's refusal to adjudicate the custody of children residing with the mother in the State of Indiana after holding that she was at fault and that the children were being provided for by the husband who was not asking for a decree awarding their custody to him. The Kenner case was cited but it appears the case was affirmed on the facts rather than upon a lack of jurisdiction.

While we doubt the wisdom of dividing the custody of the child, Logan v. Logan, 26 Tenn. App. 667, 176 S. W. (2d) 601, and strongly feel that the child's wishes should receive paramount consideration, State v. French, 182 Tenn. 606, 188 S. W. (2d) 603; Rowles v. Reynolds, 29 Tenn. App. 224, 196 S. W. (2d) 76, these questions are not now before us on the present appeal. The case will, of course, remain on the docket and it may be will require further consideration at a time when the child's wishes may be made known. To the end of forcing the

mother to bring him before the court in person, the court may be forced to carry out its expressed intention to suspend the monthly allowance if Mrs. Clothier refuses to surrender the child to the father in Tennessee at the end of the present school term. All such matters we leave to the future action of Chancery Court on the remand.

Other questions raised by the assignments are not determinative of the result.

Affirmed with costs to be equally divided between the parties.

Hale and Howard, JJ., concur.

### On Petition To Rehear.

Counsel for Mrs. Clothier has filed an earnest petition to rehear containing a number of grounds which will be considered in order.

The first is that the better and more modern rule is that the courts of the state of a child's residence rather than the state of his domicile should assume jurisdiction to determine his custody. It is necessary to point out only that in the present case, so far as appears, the state of the child's residence has never undertaken to judicially control his custody. We are, therefore, not called upon to determine the jurisdiction of California courts. We need not say what effect, if any, the present adjudication will have upon the power of the courts of California to determine in the future the question of the child's custody should he continue to reside there. While there is authority for the view that the courts of either state may have jurisdiction, we need not decide that question. We said in our former opinion: *"Where*

*there is no outstanding judicial award of custody by a foreign court,* the courts are unanimous in holding that even though the children may be physically without the state, power in the court exists to make an award of custody of children domiciled within the state.'' Emphasis added.

This statement appears in connection with extensive annotations in 9 A. L. R. 20, 442, which see. This is the most recent collation of the authorities bearing on the question and is to be considered the modern view.

█ It is said we failed to consider the insistence that the $8,500.00 installment note constituted alimony in solido. It was our intention to overrule this insistence. We must adhere to that holding. Under the authorities cited in the opinion, to the extent it remained unexecuted or unpaid, the obligation could not survive the remarriage of the parties. We do not see that taking security for installments and reducing them to note form instead of relying upon the power of the court to enforce its decree takes the case out of the general rule. The same policy which favors the cancellation of an alimony decree also favors cancellation under the circumstances of this case.

██ ██ The third ground of the petition is directed to our holding that the domicile of the child follows that of the father. It is insisted that a different rule obtains since the passage of the Woman's Emancipation Act, Code, Sections 8460, 8461. We cannot agree. White v. White, 13 Tenn. App. 622, cited in our original opinion was decided after the passage of the Act. It holds that the domicile of the wife is presumed to be that of her husband. If the domicile of the wife and mother is that of the husband and father, it would be anomalous to hold

that a minor child incapable of choosing a domicile has acquired a new domicile by virtue of being taken by the mother without the father's consent to another jurisdiction. We think the rule of the authorities cited in our former opinion applies. White v. Bickford, 146 Tenn. 608, 244 S. W. 49, 26 A. L. R. 129, recognizes the rule but holds that it does not control where the custody of the child has been judicially taken from the father and committed to the mother living in another state. We do not find in this case evidence of an intention on the part of the wife to change her domicile notwithstanding the divorce suit. She has gone from place to place since the separation and the presumption that her domicile when suit was instituted was still in Tennessee where her husband resided has not been overcome.

It is said next that since the case was triable de novo here the court should have adjudged the question of divided custody. No assignment was directed to this ruling of the Chancellor. The question was not briefed and we were not disposed, upon our own motion, to adjudicate the question without the benefit of the boy's testimony. It was not our intention to bind the Chancellor on the remand but merely to call attention to general principles and, as said in the concluding portion of the opinion, leave these matters to the future action of the Chancellor. The decree to be here entered should provide that the question may be fully considered on the remand without prejudice.

Finally, it appears the court was under the erroneous impression that the $2,400.00 allowed for support was to stand if Mrs. Clothier returned the child after the decree should become final. It appears, as set forth in the petition to rehear, that the child was to be brought

before the court within a few days after the trial on pain of cancellation of the allowance. We think this privilege should remain open for a reasonable time to be fixed by the court after the remand and the decree is, accordingly, modified to so provide. Otherwise, the petition is denied and the costs incident to same equally divided.

Hale and Howard, JJ., concur.