VAL McKAY *v.* LOUISVILLE & NORTHERN RAILROAD COMPANY *et al.*

(*Nashville.* December Term, 1915.)

1. CERTIORARI. Scope of review. Petition. Assignments of error. Necessity.

Under Acts 1907, ch. 82, creating the court of civil appeals and regulating the method of reviewing its judgments, on petition by defendant for *certiorari* to review the opinion and judgment of the court of civil appeals, which on some questions was favorable to the defendant and against the plaintiff, plaintiff, who presented no petition for *certiorari* and no assignment of errors, was concluded by the court's rulings adverse to him. (*Post,* *p.* 595.)

Acts cited and construed: Acts 1907, ch. 82.

Cases cited and approved: C., N. O. & T. P. R. R. Co. v. Brock, 132 Tenn., 477; Knight v. Cooley, 131 Tenn., 21; Murrell v. Rich, 131 Tenn., 378.

Code cited and construed: Sec. 4637(S.).

2. CONTRACTS. Construction. Intention of parties.

The object in the construction of contracts is to ascertain the intention of the parties and what the contract means as a whole. (*Post,* *pp.* 595, 596.)

Case cited and approved: Arbuckle v. Kirkpatrick, 98 Tenn., 221.

3. CONTRACTS. Construction. Relation of parties.

In the construction of contracts, courts will look to the nature of the subject-matter, the relation of the parties to the contract, and the object to be accomplished. (*Post,* *pp.* 595, 596.)

McKay v. Railroad.

4. **CARRIERS. Limiting liability. Express company's employees. Contracts of employment.**

A contract, whereby plaintiff, then employed as a messenger by an express company, entered into a contract with the express company containing the words "have entered or am about to enter," for a continued future employment, agreeing to the express company's contract to save defendant railroad harmless from all liability to the company's employees for any injury on defendant's line, whether caused by negligence of defendant or otherwise, and ratifying its contracts with carriers when accepted by the express company, initiated a new term of employment, so as to constitute a good consideration for the plaintiff's contract. (*Post, pp.* 596, 597.)

5. **CARRIERS. Contract limiting liability. Reading contract. Effect.**

In such case, plaintiff, in the absence of any fraud practiced upon him by the express company in procuring the contract, was bound thereby, whether he did or did not read the contract when he signed it. (*Post, pp.* 597, 598.)

6. **CARRIERS. Express messenger. Release of carrier's liability. Effect.**

Plaintiff, who by contract with an express company for employment as messenger assumed the risk of injury, and released his claims against carriers for liability for personal injury and ratified the company's contracts with carriers, and agreed to save the company harmless as to any claims for personal injury, and who received the employment as a consideration, was bound by his contract. (*Post, pp.* 597, 598.)

Cases cited and approved: Railroad Co. v. Stone & Haslett, 112 Tenn., 348; Railroad Co. v. Smith, 123 Tenn., 678.

7. **CARRIERS. Passenger. Express messenger.**

Under such contract of employment, the employee, injured by wreck on defendant's line, did not stand to the defendant in the relation of a passenger, so as to make defendant liable for his injury. (*Post, pp.* 598-608.)

McKay v. Railroad.

Cases cited and approved: New York C. R. Co. v. Lockwood, 17 Wall., 357; Grand Trunk R. Co. v. Stevens, 95 U. S., 655; Liverpool & G. W. Steam Co. v. Phoenix Ins. Co., 129 U. S., 397; Denver & R. G. R. Co. v. Whan, 11 L. R. A., 432; Coleman v. Penn. R. Co., 50 L. R. A., 432; Santa Fe, Prescott & Phoenix Ry. Co. v. Grant Bros. Construction Co., 228 U. S., 177; Robinson v. Baltimore & Ohio R. Co., 237 U. S., 84; Oliver v. Northern P. R. Co. (D. C.), 196 Fed., 432.

Cases cited and distinguished: Baltimore & Ohio S. W. Ry. Co. v. Voight, 136 U S., 498; Purdy v. R. W. & O. R. R. Co., 125 N. Y., 209; Hunt v. Herring, 2 Misc. Rep., 105.

8. CONTRACTS. Public policy. Release of right to recover for personal injury.

Such contract, in respect to plaintiff's surrender of his right of action against the carrier for personal injury in consideration of his employment by the express company, was not void as against public policy. (*Post, pp.* 598-608.)

---

FROM DAVIDSON

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—A. G. RUTHERFORD, Judge.

JNO. T. ALLEN, for plaintiff.

CHAS. C. TRABUE and F. M. BASS, for defendants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The case is pending on *certiorari*. The writ has been granted and argument allowed. It is a suit for dam-

ages for personal injuries sustained while plaintiff, in the discharge of his duties as a messenger for the Southern Express Company, was riding in an express car, part of a passenger train operated by the defendant railroad company. The train was wrecked, and the injuries to plaintiff resulted.

To the declaration averring the negligent operation of the train as the cause of the wreck and consequent injuries to plaintiff, the railroad company, by way of defense, interposed its plea of the general issue, and, in addition thereto, a special plea, as was its right under section 4637, Shannon's Code. This special plea admitted that the defendant was a corporation and common carrier on and prior to the date of the injury to plaintiff, but averred that on said date there was in force between it and the Southern Express Company a contract, by the terms of which it was agreed between the parties that the railroad company would furnish, for the use of the express company in the transaction of its business, cars to be hauled by the railroad company on its line, to be used for the transportation of express matter, and to be occupied by employees of said express company in charge of such express matter, such employees to be transported in said express cars free of charge by the railroad company, and that the express company should protect and hold harmless the railroad company from all liability that the railroad company might incur, or be under to the employees of the express company for

133 Tenn. 38

any injuries such employees might sustain while being transported by defendant over its line, whether such injuries were caused by the negligence of the railroad company or its employees, or otherwise, and that pursuant to said contract the railroad company did furnish to the express company cars known as express cars, and one of these was occupied by plaintiff as express messenger at the time plaintiff sustained the injuries on which this suit is based; plaintiff being in said express car as custodian of express matter therein being transported. The plea then averred the execution by plaintiff of the contract, the material parts of which are set out on the margin of this opinion.[1]

To meet this special plea, plaintiff filed a replication in which it was averred that the said accident release was executed by him without consideration, inasmuch as he was at the time it was signed already in the employ of the express company, and was given no new or different contract of employment, and further that the contract was against public policy, and for this reason void. Other matters were averred in the replication which need not be set out for reasons later appearing herein.

The company demurred to the replication. The trial judge sustained the demurrer. Plaintiff declined to plead over, whereupon his suit was dismissed, and he prosecuted his appeal.

---

1 See note at end of case.

By the judgment of the court of civil appeals it was held that the replication was sufficient, and, accordingly, it reversed the judgment of the circuit court and remanded the cause for further proceedings.

The petition for *certiorari* seeks a review of the opinion and judgment of the court of civil appeals. Upon some questions made by the replication the opinion of the court of civil appeals was favorable to the railroad company and against the plaintiff. The latter has presented no petition for *certiorari* and no assignment of errors, and is therefore concluded by the rulings adverse to it made by the court of civil appeals on the points referred to above.  See *C., N. O. & T. P. R. Co.* v. *Brock,* 132 Tenn. (5 Thomp.), 477, 178 S. W., 1116; *Knight* v. *Cooley,* 131 Tenn. (4 Thomp.), 21, 173 S. W., 435; *Murrell* v. *Rich,* 131 Tenn. (4 Thomp.), 378, 412, 175 S. W., 420; chapter 82, Acts of 1907.

The court of civil appeals was in error in its construction of the legal effect of the accident release contract.  In the construction of contracts the object is to ascertain the intention of the parties, and the important question is what the contract means as a whole.  Paige on Contracts, vol. 2, sec. 1112; *Arbuckle* v. *Kirkpatrick,* 98 Tenn. (14 Pick.), 221, 39 S. W., 3, 36 L. R. A., 285, 60 Am. St. Rep., 854.  Courts will look to the nature of the subject-matter, the relation of the parties to the contract, and the object sought to be accomplished.  Paige on Contracts, vol. 2, sec. 1123. There is no need in this case to resort to extrinsic evi-

dence in the construction of the contract. Its terms are wholly free from ambiguity.

The contract begins as an application for employment and contemplates a term *in futuro,* but the applicant does not ask for a term for any particular length of time. He is content that the company may have the right to terminate the future term at its pleasure, and he agrees to all of the terms thereinafter set out, and that all his representations are for the purpose of procuring employment with the company. He then makes certain representations about himself, and thereafter agrees to execute a bond for the protection of the company, and then affixes his signature to his application. The conclusion is irresistible that this application looked to a future employment as contradistinguished from one which existed when the application was made, and it follows that a term existing when the application was made was extinguished by acceptance of the offer made by the applicant. Such acceptance ended the pre-existing employment, and initiated the new one contemplated by the application. This view is strengthened by other parts of the contract presently to be noticed. The next part of the contract is the accident release.

It is manifest that the words ''have entered, or am about to enter,'' in the first clause of the accident release part of the contract, are intended to cover, on the one hand, the case of an applicant who, at the time of his application, was in the service of the company under a former contract of employment, which the

applicant intended to come to an end by the acceptance of his offer to make a new contract, and, on the other hand, those words were intended to cover the case of an applicant who had not heretofore been employed by the company. The signature of the applicant affixed to this part of the contract completed his offer. The next and final part of the contract is the acceptance of the applicant's offer by the company.

The signature of the company to the last portion of the contract ended the old contract and completed the new one. Its signature was a definite acceptance of the offer of the applicant to enter into the new and to abandon the old contract relations. By this completed contract, in the absence of an averment in his replication of fraud practiced upon him by the express company in the procurement of the contract, the plaintiff is undoubtedly bound in law, whether he read the contract or not, at the time he affixed his signature thereto. *Railroad Co.* v. *Stone & Haslett,* 112 Tenn. (4 Cates), 348, 79 S. W., 1031; *Railroad Co.* v. *Smith,* 123 Tenn. (15 Cates), 678, 134 S. W., 866. Plaintiff stipulated for employment of a certain kind, and employment of that kind he received from the company. The consideration for the rights which he surrendered by the terms of the contract was the employment received, and the law does not allow that he shall deny the consideration, ignore his contract, and reassert and recover under his surrendered rights, after having enjoyed the benefits for which he contracted, and which he received, as the result of his contract.

Upon the question of consideration, it is immaterial whether plaintiff stipulated for a term of service to be extinguished at the pleasure of his employer or at a fixed time *in futuro*. The material fact is that he received what he contracted for, and what he received was of value in the eye of the law. Our conclusion therefore is that the contract was binding upon him, unless public policy avoids it.

Therefore the next question is whether the relationship of common carrier and passenger existed between the railroad company and plaintiff at the time he sustained his injuries. Many State courts of last resort had answered this question in the negative in passing upon cases involving facts and contracts like this, or closely analogous to it, prior to the decision in *Baltimore & Ohio S. W. Ry. Co.* v. *William Voight,* 176 U. S., 498, 20 Sup. Ct., 385, 44 L. Ed., 560. The question was also answered in the negative in the case last named. The contract involved in that case was in substance the same as the one involved here, and there, as here, the action was by an express messenger, and against a railroad company. The question certified in that case, after stating the material facts and the terms of the contract, was as follows:

"Does said railroad company assume, towards such express messenger while being carried in the course of his said employment in one of said express cars attached to a passenger train of said railroad company, pursuant to the contracts aforesaid, the ordinary liability of a common carrier of passengers for hire so

as to render said railroad company liable as such to said express messenger, notwithstanding the contracts aforesaid, for injuries he might sustain by reason of a collision between the train to which said express car is attached and another train of said railroad com- pany, caused by the negligence of employees of the railroad company?''

The opinion of the court, after referring to *New York C. R. Co.* v. *Lockwood*, 17 Wall., 357, 21 L. Ed., 627; *Grand Trunk R. Co.* v. *Stevens*, 95 U. S., 655, 24 L. Ed., 535; *Liverpool & G. W. Steam Co.* v. *Phoenix Ins. Co.*, 129 U. S., 397 (9 Sup. Ct., 469), 32 L. Ed., 788—held that while the principles declared in the cases above referred to were salutary, and the court had no disposition to depart from them, yet it was not to be forgotten that the right of private contract was no small part of the liberty of the citizen, and that the usual and most important function of courts of justice was rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appeared that such contracts contravened public right or public welfare. The opinion continues:

''It was well said by Sir George Jessel, M. R., in *Printing & N. Registering Co.* v. *Sampson*, L. R., 19 Eq., 465: 'It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing which more than another public policy requires, it is that men of full age and compe-

tent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore you have this paramount public policy to consider; that you are not lightly to interfere with this freedom of contract.' "

It was further said in the opinion that the agreements created a very different relationship between Voight and the railway company from the usual one between passengers and railroad companies. It was pointed out that Voight was under no stress as a passenger desiring transportation from one point to another on the railroad; that his occupation of the car especially adapted to the uses of the express company was not in pursuance of any contract directly between him and the railroad company, but was an incident of his permanent employment by the express company and, said the opinion:

"He was on the train, not by virtue of any personal contract right, but because of a contract between the companies for the exclusive use of a car. His contract to relieve the companies from any liability to him, or to each other for injuries he might receive in the course of his employment, was deliberately entered into as a condition of securing his position as a messenger."

The opinion then points out the distinction between the *Voight Case* and the *Lockwood Case*.

What has been said about the case last commented on fairly indicates the view taken of the question by

decisions which had preceded that case, and by decisions which have followed it and approved its reasoning. Very elaborate notes discussing the cases on this subject will be found accompanying *Denver & R. G. R. Co.* v. *Whan,* 11 L. R. A. (N. S.), 432, and *Coleman* v. *Pennsylvania R. Co.,* 50 L. R. A. (N. S.), 432.

The great weight of authority evidently supports the view that the relationship is not that of passenger and carrier in cases analogous on their facts to the present case and the *Voight Case.* In those jurisdictions where, under similar contracts and facts, a contrary ruling is found, it is generally rested upon some peculiar constitutional or statutory provision. An opinion by the supreme court of the United States approving the doctrine of the *Voight Case* is to be found in *Santa Fe, Prescott & Phoenix Ry. Co.* v. *Grant Bros. Construction Co.,* 228 U. S., 177, 33 Sup. Ct., 474, 57 L. Ed., 787, and a later case by the same court is *Robinson* v. *Baltimore & Ohio R. Co.,* 237 U. S., 84, 35 Sup. Ct., 491, 59 L. Ed., 849. In the case last named the contract involved was between the Pullman Company and one of its porters. The latter sued the railway company for injuries sustained while the porter was in the discharge of his duty on the Pullman car, resulting from a collision caused by the negligence of the defendant. The defense was based on a contract between the porter and the Pullman Company similar in import to that under consideration in the present case. The court held it to be clear that unless the contract was condemned by statute it was valid, and

was a bar to plaintiff's recovery, citing the *Voight Case* and *Santa Fe, P. & P. R. Co.* v. *Grant Bros. Construction Co.*, supra. The statute relied on as destroying the validity of the contract was section 5 of the Employer's Liability Act of April 22, 1908, 35 Stat. at L. 66, ch. 149 (U. S. Comp. St. 1913, sec. 8661), which provides that any contract, the purpose or intent of which shall be to enable any common carrier to exempt itself from liability created by this act, shall to that extent be void. But the court held that the Pullman porter was not an employee of the defendant railroad company within the meaning of that statute, and it was also held that the relationship between the railroad company and the Pullman Company was not one of co-proprietorship, and on this point the opinion cites *Oliver* v. *Northern P. R. Co.* (D. C.), 196 Fed., 432.

Upon the foregoing authorities, we think it clear that the contract set up by the special plea was founded upon a sufficient consideration, was not opposed to public policy, and was a bar to the judgment sought by the plaintiff. The only case cited by the court of civil appeals to sustain its construction of the contract is *Purdy* v. *R. W. & O. R. R. Co.*, 125 N. Y., 209, 26 N. E., 255, 21 Am. St. Rep., 736. In respect of the release which the baggageman in that case signed, the New York court, in its opinion, said:

" 'He simply signed the contract, and the defendant kept on employing the plaintiff as baggageman;' in other words, continued the already existing employment."

McKay v. Railroad.

The language above quoted distinguishes the *Purdy Case* from the present one, for here, as we have held, the parties terminated the old and created a new contract, of which new contract the accident release was a part. The *Purdy Case* was referred to in a later New York case. *Runt* v. *Herring,* 2 Misc. Rep., 105, 21 N. Y. Supp., 244. The court, in that opinion, said:

"The recital of the employment and the dollar paid distinguishes the case from *Purdy* v. *Rome, etc., R. Co.,* 125 N. Y., 209 (26 N. E., 255, 21 Am. St. Rep., 736), and probably discloses a sufficient consideration to sustain the agreement."

It results that the judgment of the court of civil appeals is reversed, and the judgment of the circuit court is affirmed.

## NOTE.

### "Contract.

### "Application for Employment with Southern Express Company.

"I hereby apply for employment by the Southern Express Co., and agree that my employment, if I am employed by the said company, shall not be for any particular length of time, and that the said company reserve to itself the right to terminate the contract at pleasure, and I agree to all of the terms and conditions hereinafter set out, and all of the statements hereinafter made, are made as representations for the purpose of procuring employment with said company."

"Accident Release.

"Whereas, I, the undersigned, have entered, or am about to enter, the employment of the Southern Express Company, and in the course of such employment may be required to render services in the care, carriage, or handling of merchandise and property in course of transportation by cars, vessels and vehicles, belonging to the different railroad, stage and steamboat lines upon which the company relies for its means of forwarding property delivered to it to be forwarded;.

"And whereas, such express company, under its contracts with many of the corporations and persons owning or operating such railroad, stage and steamboat lines, is or may be obligated to indemnify and save harmless such corporations and persons from and against all claims for injuries sustained by its employees:

"Now, therefore, in consideration of the premises and of my said employment I do hereby assume all risk of accidents and injuries which I shall meet with or sustain in the course of my employment, whether occasioned or resulting by or from the gross or other negligence of any corporation or person engaged in any manner in operating any railroad or vessel, or vehicle, or of any employee of any such corporation or person, or otherwise, and whether resulting in my death or otherwise.

"And I do hereby agree to indemnify and save harmless the Southern Express Company of and from any and all claims which may be made against it at any

time by any corporation or person under any agreement which it has made, or may hereafter make, arising out of any claim or recovery upon my part, or the part of my representatives, for damages sustained by reason of my injury or death, whether such injury or death result from the gross negligence of any person or corporation, or of any employee of any person or corporation, or otherwise.

"And I hereby bind myself, my heirs, executors and administrators with the payment to such express company, upon demand, of any sum which it may be compelled to pay in consequence of any such claim, or in defending the same, including all counsel fees and expenses of litigation connected therewith.

"I do further agree that in case I shall at any time suffer any such injury, I will at once, without demand, and at my own expense, execute and deliver to the corporation or persons owning or operating the railroad, stage or steamboat line upon which I shall be so injured, a good and sufficient release, under my hand and seal, of all claims, demands, and causes of action, arising out of such injury, or connected with or resulting therefrom.

"I do hereby ratify all agreements heretofore made by said express company with any corporation or persons operating any railroad, stage and steamboat line in which such express company has agreed in substance that its employees shall have no cause of action for injuries sustained in the course of their employment upon the line of such contracting party, and I agree to be

bound by each and every of such agreements in so far as the provisions thereof relative to injuries sustained by employees of the company are concerned, as fully as if I were a party thereto.

"And I do hereby authorize and empower said express company, at any time while I shall remain in its service, to contract for me and in my behalf, in its own name or in mine, with any corporation or persons operating any railroad, stage or steamboat line, for my transportation as a messenger or employee free of charge, upon the condition and consideration that neither I nor my personal representatives, nor any person claiming under me, will make any claim for compensation because of any injury sustained by me, whether resulting from the gross negligence of such corporations or persons, or of any employee of such corporations or persons, or otherwise, and the contracts so made shall be as binding and obligatory upon me as if signed and delivered by me.

"And I do hereby further agree that the provisions of this agreement shall be held to inure to the benefit of any and every corporation and of all persons upon whose railroad, stage or steamboat lines the Southern Express Company shall forward merchandise, as fully and completely as if made directly with such corporations or persons.

"I further agree in consideration of my employment by said Southern Express Company, that I shall assume all risks of accident or injury which I shall meet

or sustain in the course of such employment, whether occasioned by the negligence of said company, or any of its members, officers, agents, or employees, or whether occasioned by the negligence of any railroad, steamboat or canal company, or stage company with which the said express company may be in such contractual relations, or by the agents, servants, or employees of any such company, or otherwise; and that in case I shall at any time suffer any such injury, I will at once execute and deliver to said company a good and sufficient release, under my hand and seal, of all claims, demands and causes of action arising out of such injury or connected therewith, or resulting therefrom.; and I hereby bind myself, my heirs, executors, and administrators with the payment to said express company, on demand, of any sum which it may be compelled to pay in consequence of any such claim, or in defending the same, including all counsel fees and expenses of litigation connected therewith. I do expressly declare that while traveling over any of the lines of railway, or stageroad, or steamboat routes, or while being about to so travel for the said Southern Express Company, the relation of passenger and carrier will not exist between me and such carrier, but my rights upon such lines shall exist solely because of my employment with the said Southern Express Company.

"Witness my hand and seal this 23d day of June nineteen hundred and seven.

"(Sign name in full) VALENTINO McKAY.

"Note.—If applicant is under age his guardian must also sign this release.

"———————————, Parent or Guardian.

"In the presence of: C. M. FISHER. Ra."

"Contract of Employment.

"On the statements and conditions contained in the foregoing application the Southern Express Company hires the applicant above named to serve as messenger, and to perform such other services as may be directed from time to time; from June 23, 1907, and agrees to pay him for his services at the rate of (agreed upon, or to be agreed upon, for such employments to which the applicant may be assigned from time to time),—— dollars per month, or fractional part thereof, while occupying such position, or until the date of his resignation or discharge.

"Dated at Nashville, Tenn., 8/23, 1907.

"SOUTHERN EXPRESS COMPANY,

"By C. M. FISHER, Ra.

"VALENTINO McKAY, Employee."

"Witness: C. M. FISHER."