# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

DONALD L. MOTT,　　　　　　　　　)
MURL KENNAMORE, and　　　　　　)
K & M PETROLEUM CORP.,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Plaintiffs/Appellees,　　　　) Fayette Chancery No. 10018
　　　　　　　　　　　　　　　　　)
VS.　　　　　　　　　　　　　　　) Appeal No. 02A01-9410-CH-00244
　　　　　　　　　　　　　　　　　)
D. DEAN GRAVES and SECURITY　　)
TITLE INSURANCE CO., INC.,　　　　)
　　　　　　　　　　　　　　　　　)
　　　Defendants/Appellant　　　　)

APPEAL FROM THE CHANCERY COURT OF FAYETTE COUNTY
AT SOMERVILLE, TENNESSEE
THE HONORABLE JOHN HILL CHISOLM, CHANCELLOR

FILED

December 20, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

**ROBERT B. C. HALE**
**WARING COX**
Memphis, Tennessee
Attorney for Defendant/Appellant Graves

**H. MORRIS DENTON**
**DENTON & CARY**
Bolivar, Tennessee
Attorney for Plaintiffs/Appellees

**AFFIRMED**

**ALAN E. HIGHERS, JUDGE**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, JUDGE**

Appellant D. Dean Graves ("Graves") appeals the chancellor's decision requiring

Graves to specifically perform a contract by purchasing an $85,000 parcel of real estate offered for sale by the Appellees, Donald L. Mott ("Mott") and Murl Kennamore ("Kennamore").

The facts of this case are largely undisputed. On September 11, 1991, Graves entered into a contract with Mott and Kennamore to purchase 10.7 acres of unimproved real property located in Fayette County, Tennessee. The property was originally owned by K & M Petroleum, Inc., a now defunct corporation of which Mott and Kennamore were sole shareholders. As originally executed, the contract gave Graves the option to purchase the entire 10.7 acre parcel for $85,000. The contract provided that closing would take place nine months after Graves deposited $1,000 earnest money in escrow.

On March 24, 1992, the parties agreed to execute an amendment to the original contract. Under the terms of the amended agreement, Graves had the option to sell one acre of the 10.7 acre parcel prior to closing on the entire parcel. The language of the contract amendment provided in pertinent part:

> (b) Section 2. Place and Time of Closing. Shall be amended as follows:
>
> The current paragraphs (a) and (b) shall be deleted, and the following inserted.
> (a) Subject to the conditions herein having been met or waived, the Closing will take place on or before January 1, 1993, or the first working day thereafter, at the offices of the closing attorney. At Purchaser's sole option, Purchaser may close and/or assign his interest (as defined by this agreement), in a one acre parcel located at the intersection of Highway 57 and Highway 18 prior to the scheduled closing of the whole property as noted above. In the event Purchaser does close and/or assign his interest in the one acre parcel, the total sum of Twenty Thousand Dollars ($20,000) shall be entered into escrow from the sale and/or assignment as the total proceeds of Purchaser's resale of the parcel (and/or assignment of his interest in the parcel), and be applied to Purchaser's account at closing of the balance of the property.
>
> (b) In the event Purchaser closes the one acre and escrows the additional money, Purchaser shall automatically waive the conditions of Purchaser's obligations on the balance of the property, in Section 7, paragraphs (a) Utilities, (b) Inspections, (c) Zoning/Use, (g) Permits, and (k) Financing, and closing of the one acre parcel shall serve as Purchaser's notice to close the balance of the property as required in paragraph (a) above of this section.
>
> All other terms and conditions of the agreement shall remain in full force and effect.

In a letter dated October 16, 1991, Graves contacted Thomas Sasser, owner of Sasser Oil Company and a distributor for Exxon, in an effort to sell the single acre. It is

2

evident from Graves' correspondence to Sasser, as well as from Graves' testimony at trial, that Graves' original intention was to purchase all and develop most of the 10.7 acre site. Graves sold the one acre parcel to Sasser on April 24, 1992, for $60,000. According to the terms of the amended agreement, Graves placed $18,169.81 from the sale of the single acre in escrow. That sum was to be applied to Graves' account upon the sale of the balance of the property.

It is at this juncture in the parties' transaction that a dispute arose. There is no question that on January 1, 1993, the date established for closing the balance of the property, Graves failed to close. Graves admits that he breached the parties' contract, but argues that the Appellees' sole remedy is set forth in the contract's liquidated damages clause. That clause states:

> **Section 9. Non-performance.**
> (b) If Purchaser defaults, Seller and Purchaser agree that it will be extremely difficult or impractical to fix Seller's actual damages. Therefore, the Earnest Money shall be delivered to Seller as liquidated damages for loss of a bargain and not as a penalty. Purchaser will then be released from all liability to Seller related to this Agreement, such liquidated damages being Seller's sole remedy.

Mott and Kennamore argue that, pursuant to the terms of the amended contract, Graves became bound to close on the balance of the 10.7 acre parcel after he exercised his option to sell the single acre. The Appellees further contend, and the lower court so found, that Graves' failure to close on the balance of the property entitles Appellees to the remedy of specific performance. In support of their argument, Mott and Kennamore cite the language of the contract amendment: "Subject to the conditions herein having been met or waived, the Closing will take place on or before January 1, 1993. . . . In the event Purchaser does close . . . his interest in this one acre parcel, the total sum of . . .$20,000 shall be entered into escrow from the sale . . . and be applied to Purchaser's account at closing of the balance of the property." The amendment also states: "closing of the one acre parcel shall serve as Purchaser's notice to close the balance of the property as required in paragraph (a) above of this section."

The interpretation of a written agreement is a matter of law and not of fact. APAC-Tennessee, Inc. v. J.M. Humphries Const. Co., 732 S.W.2d 601 (Tenn. App. 1986). Thus,

3

this Court's scope of review is *de novo* upon the record with no presumption of correctness of the trial court's conclusions of law. Adams v. Dean Roofing Co., 715 S.W.2d 341 (Tenn. App. 1986).

It is well established that the cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. Rob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578 (Tenn. 1975). A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. McKay v. Louisville & N. R.R. Co., 133 Tenn. 590, 182 S.W. 874 (1916). In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning. Taylor v. White Stores, Inc., 707 S.W.2d 514 (Tenn. App. 1985). In Hamblen County v. City of Morristown, 656 S.W.2d 331, 334 (Tenn. 1983), the Tennessee Supreme Court stated:

> 'The court in interpreting words or other acts of the parties puts itself in the position which they occupied at the time the contract was made. In applying the appropriate standard of interpretation even to an agreement that on its face is free from ambiguity it is permissible to consider the situation of the parties and the accompanying circumstances at the time it was entered into--not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement.' Restatement of Contracts, § 235(d) and Comment.
>
> ' . . . Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it.' 17 Am. Jur. 2d Contracts § 255 (1964).

In the present case, this Court is presented with a single contract, the provisions of which cannot be harmonized. The amendment to the contract neither refers to nor deletes the contract's liquidated damages clause, yet the rights contained in the amendment necessarily negate the possibility of exercising the contract's liquidated damages provisions. We cannot ascertain the parties' intentions from the words of the contract alone. Thus, we look to the circumstances which existed at the time the agreements were

4

executed in order to determine the parties' intentions. <u>Hamblen County</u>, 656 S.W.2d at 334.

When the parties executed the original contract, Graves placed $1,000 earnest money in escrow. By doing so, he retained the right to buy 10.7 acres of property for a period of nine months. The parties' original agreement was essentially an option contract. <u>See generally</u> <u>Pinney v. Tarpley</u>, 686 S.W.2d 574, 580 (Tenn. App. 1984). As is typical of real estate option contracts, Graves agreed to forfeit the escrow money, as liquidated damages to the sellers (Appellees), in the event that he failed to purchase the property at the expiration of the option term.

When the amendment to the original contract was executed in March of 1992, the nature of the contract changed. The amendment required Graves to place $20,000 from the sale of the one acre parcel into escrow. It further provided that the $20,000 sum "shall" be applied to Graves' account at closing of the balance of the property. The amendment states that closing of the one acre parcel "shall" serve as Graves' notice to close the balance of the property. Finally, Graves' actions were consistent with a complete understanding of the amendment's terms. If, after amending the contract, Graves had failed to close on either the single acre or the balance of the property, the Appellees' remedy would have been limited to $1,000 in liquidated damages. However, having exercised his option to sell the one acre parcel, we find that Graves was bound to close on the balance of the property.

The chancellor awarded Appellees the remedy of specific performance. Graves argues that the Appellees failed to prove that they suffered damages and are thus not entitled to specific performance. Specific performance is an equitable remedy. <u>GRW Enters., Inc. v. Davis</u>, 797 S.W.2d 606, 614 (Tenn. App. 1990) (citing <u>T.J. Moss Tie Co. v. Hill</u>, 191 Tenn. 582, 586, 235 S.W.2d 587, 588 (1951)). It is available to either the buyer or the seller, subject to the trial court's discretion, where an award of damages cannot make the aggrieved party whole. <u>Shuptrine v. Quinn</u>, 597 S.W.2d 728, 730 (Tenn. 1979). An award of specific performance is particularly appropriate when dealing with contracts for the sale of real property, because of the unique nature of land. <u>GRW Enters.</u>, 797

5

S.W.2d at 614.   In <u>Lane v. Associated Housing Developers</u>, 767 S.W.2d 640, 642 (Tenn.

App. 1988) the court, quoting <u>Gibson's Suits in Chancery</u>, stated:

> If a contract has all the essentials of validity . . . and if compensation in damages for its breach is impracticable, or would be inadequate, a complaint will be maintained for specific performance. The broad ground of jurisdiction in such cases is the inadequacy, or impracticability, of damages to do complete justice to the injured party. If the contract relates to real estate and is in writing, and the foregoing requirements are satisfied, specific performance will be decreed, for damages cannot adequately represent real property.

An award of damages is neither adequate nor practical in the present case. The Appellees contracted to sell the entire 10.7 acre parcel to Graves for $85,000. Graves sold one acre, comprising the corner lot of the parcel, for $60,000. Not only is the tract no longer intact, the most valuable portion of the 10.7 acre parcel is owned by a third party. We agree with the trial court's determination that specific performance was an appropriate remedy under the facts of the case at bar.

Accordingly, we affirm the chancellor's ruling in all respects. Costs on appeal are taxed to the Appellant.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.