IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2000 Session

## EDDIE JOE HURST, SR. v. SHEILA GAIL WILLIAMS HURST

**Appeal from the General Sessions Court for Blount County**
**No. S-619, William R. Brewer, Judge**

**FILED APRIL 30, 2001**

**No. E2000-00458-COA-R3-CV**

This appeal from the Blount County General Sessions Court concerns whether the Trial Court erred in dismissing the Complaint to Enforce Judgment filed by the Appellant, Sheila Gail Williams Hurst. Ms. Hurst appeals the decision of the General Sessions Court. We reverse the decision of the Trial Court and remand for further proceedings, if any, consistent with this opinion. We adjudge cost of the appeal against the Appellee, Eddie Joe Hurst, Sr.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Reversed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Robert M. Cohen, Maryville, Tennessee, for the Appellant, Sheila Gail Williams Hurst.

Craig L. Garrett, Maryville, Tennessee, for the Appellee, Eddie Joe Hurst, Sr.

**OPINION**

This appeal arises from the first and second divorce actions between Sheila Gail Williams Hurst, the Appellant, and Eddie Joe Hurst, Sr., the Appellee. Ms. Hurst appeals the judgment of the Blount County General Sessions Court and presents for our review one issue which we restate: whether the Trial Court erred in dismissing Ms. Hurst's Complaint to Enforce the Judgment.

We reverse the judgment of the Trial Court and remand for further proceedings, if any, consistent with this opinion.

The parties were married initially in Sevier County on May 6, 1968. They were divorced by the General Sessions Court for Blount County on April 1, 1991. A marital dissolution agreement (hereinafter referred to as MDA #1) was entered into by the parties and incorporated into the final decree for divorce. The parties remarried on March 8, 1992 and were divorced again by final decree

on June 30, 1997 in the General Sessions Court for Blount County. A second marital dissolution agreement (hereinafter referred to as MDA #2) was entered into by the parties and incorporated into the final decree for divorce. According to the record, Ms. Hurst was not represented by counsel in the second divorce proceeding.

The marital dissolution agreements are at issue on appeal. The parties divided certain property in MDA #1 as follows:

> 4. Husband shall pay to wife one-half of the husband's Alcoa Retirement Plan having Alcoa pay same to wife. Said sum shall be paid as soon as possible, and husband shall execute whatever papers are necessary in order for Alcoa to release one-half of the Retirement Fund to wife.
> 5. Wife shall receive One Hundred Percent (100%) of the stock at Merrill Lynch.
> 6. Wife shall receive one-half of all sums received by husband as a result of the Alcoa Profit Sharing Program since the parties separated in October 1990.

The aforementioned assets in MDA #1 were never distributed to Ms. Hurst, nor was any action taken by either party to arrange for Ms. Hurst to receive this property. The second Marital Dissolution Agreement divided personal property as follows:

> 7. The parties have previously divided all other personal property, furniture, and furnishings, and each party shall receive all items which are in their respective possession at the time of entry of the Final Decree in this cause.

Following her second divorce from Mr. Hurst, Ms. Hurst filed a Complaint to Enforce Judgment on April 30, 1998 requesting that the Court enforce the property settlement paragraphs 4, 5, and 6 from MDA #1. Following a hearing on May 4, 1999, the Trial Court issued a memorandum opinion[1] which states in pertinent part:

> It is the Defendant's position that the Final Decree of Divorce is just like any other judgment and that it can be satisfied just like any other judgment obtained by one party against the other. The Plaintiff's position is that the subsequent remarriage and re-divorce caused the previous divorce decree to become null and void. At first glance it would appear that the Defendant's position should be upheld

---

[1] In the original Complaint to Enforce Judgment, the Plaintiff was Sheila Gail Hurst and the Defendant was Eddie Joe Hurst. In the Memorandum Opinion, the Court reversed the positions of Mr. and Ms. Hurst, and referred to the Plaintiff as Mr. Hurst and the Defendant as Ms. Hurst.

inasmuch as the judgment is not yet satisfied. However, the Court must look to the uniqueness of the situation before it and fashion a equitable remedy. It seems to the Court that it is almost like the original divorce decree was compromised and settled by the parties' subsequent remarriage and re-divorce. It is almost like novation of a contract. Further, to rule otherwise the Court would almost have to try to get into the parties' heads to figure out what exactly they were trying to accomplish by the second division of property. Finally, it just seems like the equitable thing to do, to rule in favor of the Plaintiff. The Court hereby orders that the relief sought by the Defendent should not be granted and directs the Plaintiff to prepare an Order reflecting the same.

An order was entered on February 3, 2000 dismissing Ms. Hurst's Complaint to Enforce Judgment.

Ms. Hurst's sole issue on appeal is whether the Trial Court erred in dismissing the Complaint to Enforce Judgment.

Because the issue on appeal deals directly with two marital dissolution agreements, and their enforcement, we first address the contractual nature of such agreements as found in *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998):

> A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings. *See Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993). "A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect.'" *Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. App. 1990) (quoting *Matthews v. Matthews*, 24 Tenn. App. 580, 593, 148 S.W.2d 3, 11-12 (1940)).

We review the Trial Court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Conclusions of law are reviewed de novo with no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996). Because contract interpretation involves a legal matter rather than a factual matter, the interpretation of a contract is not entitled to a presumption of correctness under Tenn. R. App. P. 13(d). The Trial Court's interpretation of the contract did not depend on disputed facts; therefore, it is our job to review the contract and make our own determination of its meaning. *Hillsboro Plaza Enterprises v. Moon*, 860 S.W.2d 45 (Tenn. Ct. App. 1993).

Ms. Hurst argues that the Trial Court should have enforced MDA #1 regardless of her remarriage and second divorce from Mr. Hurst, and the language of paragraph 7 in MDA #2. She further argues that according to the decision in *Clothier v. Clothier*, 232 S.W.2d 363 (Tenn. Ct. App. 1950), she is entitled to the property in MDA #1, as that case implies that if a property settlement is not considered alimony, it can not be avoided by a remarriage. Additionally, Ms. Hurst asserts that the property settlement in MDA #1 was final and unchangeable as a contractual agreement according to *Vanatta v. Vanatta*, 701 S.W.2d 824 (Tenn. Ct. App. 1985). Finally, Ms. Hurst argues that the personal property in MDA #2 does not include the property in MDA #1; as the property in MDA #1 is not marital property, but became separate property upon entry of the decree approving MDA #1.

Mr. Hurst contends that only MDA #2 governs the distrbution of their personal property and that the language in paragraph 7 of MDA #2 is clear and unambiguous. Mr. Hurst argues that because Ms. Hurst never received the property in MDA #1, and remarried and divorced Mr. Hurst a second time, she is no longer entitled to that property per MDA #2. Mr. Hurst argues that Ms. Hurst is attempting to insert parol evidence and is asking the Court to determine the mindset of the parties when they agreed to the provisions in MDA #2.

"A divorce decree which incorporates a marital dissolution agreement is to be construed like other written instruments, with the court seeking to determine the apparent purposes in the minds of the draftsmen and the trial court," *Kensinger v. Conlee*, an unreported opinion of this Court, filed in Jackson, on July 30, 1999. See *Livingston v. Livingston*, 429 S.W.2d 452 (1967). In construing both MDA #1 and MDA #2 as contracts, we are compelled to follow the well established laws for the interpretation of contracts as stated in *Rainey v. Stansell*, 836 S.W.2d 117, 118-119 (Tenn. Ct. App. 1992):

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. *Mckay v. Louisville & N.R. Co.*, 133 Tenn. 590, 182 S.W. 874 (1916); *Burns v. Temperature Control Co.*, 52 Tenn.App. 51, 371 S.W.2d 804 (1962). In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning, *Taylor v. White Stores, Inc.*, 707 S.W.2d 514 (Tenn.App.1985), and neither party is to be favored in the construction. *Ballard v. North American Life Ins. Co.*, 667 S.W.2d 79 (Tenn.App.1983).
>
> The court, at arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. *Petty v. Sloan*,

197 Tenn. 630, 277 S.W.2d 355 (1955); *Sutton v. First Nat'l Bank of Crossville*, 620 S.W.2d 526 (Tenn.App.1981). All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract. *Bank of Commerce & Trust Co. v. Northwestern Nat'l. Life Ins. Co.*, 160 Tenn. 551, 26 S.W.2d 135, 68 A.L.R. 1380 (1930).

In so doing, we first turn to the language of MDA #1. At the end of their first marriage, Mr. and Ms. Hurst divided the pertinent property in the following manner:

4. Husband shall pay to wife one-half of the husband's Alcoa Retirement Plan having Alcoa pay same to wife. Said sum shall be paid as soon as possible, and husband shall execute whatever papers are necessary in order for Alcoa to release one-half of the Retirement Fund to wife.
5. Wife shall receive One Hundred Percent (100%) of the stock at Merrill Lynch.
6. Wife shall receive one-half of all sums received by husband as a result of the Alcoa Profit Sharing Program since the parties separated in October 1990.

We find that the language of paragraphs 4, 5, and 6 is clear and unambiguous as to what Ms. Hurst was to receive from the first divorce. We take note of the fact that paragraph 4 states that "husband shall execute whatever papers are necessary in order for Alcoa to release one-half of the Retirement Fund to wife" as an argument has been made by Mr. Hurst that Ms. Hurst has failed to do anything with respect to obtaining the aforementioned property. The responsibility for distribution to Ms. Hurst clearly is that of Mr. Hurst and his attorney.

It is undisputed by both parties that at the time of the first divorce and until the execution of MDA #2, Ms. Hurst had a contractual right to receive the property as set forth in paragraphs 4, 5, and 6 of MDA #1. We find that she retains this right. The Supreme Court in *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975), stated:

An agreement between a husband and wife on matters outside the scope of the legal duty of child support during minority, or alimony in futuro over which the court also has continuing statutory power to modify, retains its contractual nature, although included in the decree of the court, and is enforceable in the same manner as other contracts.

MDA #1 is a contract and is to be enforced as it is written. That being stated, the next matter for determination is whether Ms. Hurst's remarriage and second divorce, and the language in paragraph 7 of MDA #2 effectively negates that contract. Paragraph 7 of MDA #2 states in pertinent part:

7. The parties have previously divided all other personal property, furniture, and furnishings, and each party shall receive all items which are in their respective possession at the time of entry of the Final Decree in this cause.

The question remains as to whether MDA #2 disposes of the same property as paragraphs 4, 5, and 6 of MDA #1. Mr. Hurst argues that since the property from MDA #1 was not actually in Ms. Hurst's possession at the "time of entry of the Final Decree in this cause," she is no longer entitled to it. While MDA #2 does not specifically mention those assets found in paragraphs 4, 5, and 6 of MDA #1, it does not exclude them either. The parties obviously disagree as to the interpretation of paragraph 7 of MDA #2 with respect to the definition of "personal property" and the meaning of "each party shall receive all items which are in their respective possession at the time of entry of the Final Decree in this cause."

The mere fact that two parties disagree about the interpretation of a specific provision of a contract does not create an ambiguity. *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458 (Tenn. Ct. App. 1994), *Oman Constr. Co. v. Tennessee Valley Authority*, 486 F.Supp. 375 (M.D. Tenn. 1979). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975). In keeping with the above-stated rule, we find that paragraph 7 of MDA #2 is unambiguous, however, we disagree with the Trial Court's interpretation of that paragraph.

The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975), *Guardian Life Ins. Co. v. Richardson*, 129 S.W.2d 1107 (1929). While the language of paragraph 7 in MDA #2 may be unambiguous, it is evident that the parties disagree as to its interpretation. It is therefore incumbent upon this Court to determine the plain, ordinary meaning of the terms of paragraph 7. A corollary rule of construction to ordinary plain meaning that is also applicable is found in *Parker v. Provident Life and Accident Insurance Company*, 582 S.W.2d 380, 383 (Tenn. 1979):

> when the courts have repeatedly interpreted certain words in legal documents as having a particular meaning and the drafters of such legal documents continue to use such words with knowledge of the interpretation placed upon them by the courts it will be assumed that the draftsmen in using such words did so knowingly with the intention that such judicial gloss will be placed upon them.

We therefore turn to the particular meaning of the term "property" with respect to the division of a marital estate as found in a Marital Dissolution Agreement. Dividing a marital estate necessarily begins with the classification of property as either separate or marital property. *Herrera*

*v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996). Separate and marital property are defined by statute as set forth in T.C.A. 36-4-121 in pertinent part:

> 36-4-121 Distribution of marital property. (b) For purposes of this chaper: (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing or up to the date of the legal separation hearing unless equity would require another valuation date and owned by either or both spouses as of the date of filing of a complaint for divorce or complaint for legal separation, except in the case of fraudulent conveyance in anticipation of filing and including any property to which a right was acquired up to the date of the final divorce hearing, or the date of legal separation hearing unless equity would require another valuation date, and valued as of a date as near as reasonably possible to the final divorce hearing date or the date of the legal separation hearing.
>
> (2) "Separate property" means:
>   (A) All real and personal property owned by a spouse before marriage;
>   (B) Property acquired in exchange for property acquired before the marriage;
>   (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

The property awarded to Ms. Hurst in MDA #1, more specifically, one-half of the Alcoa Retirement Plan, one hundred percent (100%) of the stock at Merrill Lynch, and and one-half of all sums received by husband from Alcoa Profit Sharing Program became the separate property of Ms. Hurst upon the execution of MDA #1. Mr. and Ms. Hurst signed an MDA which is a legal binding contract. The property at issue then became separate property Ms. Hurst brought into her second marriage. It is irrelevent that it was Mr. Hurst that Ms. Hurst married following her first divorce. Had Ms. Hurst married Mr. Hurst following a divorce from someone other than Mr. Hurst, there would be no argument as to whom the property she received from her first divorce belonged. An argument that Ms. Hurst somehow waives her right to property that became hers in her first divorce simply because she married the same man twice is without merit.

In conclusion, we note the memorandum opinion of the Trial Judge speaks of "the equitable thing to do." In this regard, we point out the following maxim of equity and part of the text found in Gibson's Suits in Chancery, 5th Ed., § 54:

§ 54. Equity Regards That as Done Which Ought to Be Done. - In a Court of Chancery *ought to be* becomes *is*; and whatever a party ought to do, or ought to have done, in reference to the property of another, will, ordinarily, be regarded *as done*; and the rights of the parties will be adjudicated as though, in fact, it *had been done*. (emphasis in original)

Paragraph 7 of MDA #2 provides that "each party shall receive all items which are in their respective possession at the time of entry of the Final Decree in this cause." In equity, the property referred to in paragraphs 4, 5 and 6 of MDA #1 was the separate property of Ms. Hurst, its transfer to her would "be regarded as done," and hence this property would be considered as in Ms. Hurst's "possession at the time of entry of the Final Decree" in the second divorce.

For the foregoing reasons the judgment of the Trial Court is reversed and the cause remanded for collection of costs below which are, as are costs of appeal, adjudged to the Appellee, Eddie Joe Hurst, Sr.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE