IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 24, 1999 Session

# BOARDWALK REGENCY CORPORATION v. ROY B. PATTERSON

and

# TRUMP TAJ MAHAL ASSOCIATES v. ROY B. PATTERSON

**Appeals from the Chancery Court for Putnam County**
**Nos. 96-478 & 96-479    Vernon Neal, Chancellor**

---

**No. M1999-02805-COA-R3-CV - Filed December 18, 2001**

---

This appeal involves the efforts of two Atlantic City casinos to collect the gambling debts of a Tennessee resident. After obtaining default judgments against the Tennessee resident in New Jersey, the casinos twice attempted to file their judgments in the Chancery Court for Putnam County in accordance with the Uniform Enforcement of Foreign Judgments Act. On both occasions, the trial court declined to file the judgments after finding that they were irregular and that they were not properly authenticated. On the second occasion, the trial court also concluded that its refusal to file the first set of judgments precluded the casinos from filing the second set of judgments. The casinos have appealed. We have determined that the second set of judgments meet the requirements for filing and enforcement under the Uniform Enforcement of Foreign Judgments Act and that the casinos' unsuccessful efforts to file the first set of judgments does not prevent them from filing the second set of judgments. Accordingly, we reverse the trial court's order denying the application to enforce the foreign judgments.

**Tenn. R. App. P. 3 Appeals as of Right; Judgment of the Chancery Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which ALAN E. HIGHERS and DAVID R. FARMER, JJ., joined.

John E. Buffaloe, Jr., Nashville, Tennessee, for the appellants, Boardwalk Regency Corporation and Trump Taj Mahal Associates.

Jon E. Jones and Gwen D. Jones, Cookeville, Tennessee, for the appellee, Roy B. Patterson.

**OPINION**

**I.**

Sometime in the early or mid-1990s, Roy Patterson, a resident of Putnam County, traveled to Atlantic City, New Jersey where he ran up debts at two casinos. He returned to Tennessee owing

the Boardwalk Regency $5,558.92, and the Trump Taj Mahal $5,587.32. Both casinos eventually filed suit against Mr. Patterson in the Superior Court of New Jersey in Atlantic County and obtained default judgments against him for their respective debts.

In 1995 the Boardwalk Regency and the Trump Taj Mahal retained counsel in Tennessee to register and enforce their judgments against Mr. Patterson under Tennessee's version of the Uniform Enforcement of Foreign Judgments Act [Tenn. Code Ann. §§ 26-6-101, -107 (2000)]. However, in July 1996, the trial court dismissed the applications to enforce the judgments after concluding that they were irregular on their face, that they conflicted "with another judgment filed in this record from the same case in the same Court," and that they lacked "proper certification."

The casinos did not let the matter drop. As best we can determine, they filed new lawsuits against Mr. Patterson and, on October 21, 1996, obtained new judgments against him in the Special Civil Part of the Superior Court of New Jersey. The New Jersey court awarded the Trump Taj Mahal a $5,730.90 judgment[1] and the Boardwalk Regency a $5,760.07 judgment.[2] Thereafter, on December 17, 1996, the casinos' Tennessee lawyer applied to the trial court to enforce these new judgments and provided the court with "exemplified" copies of the judgments and "affidavits" supporting the enforcement of the judgments.[3] Mr. Patterson moved to dismiss these applications on two grounds – that the New Jersey court documents did not include a "written [o]rder of [j]udgment" and that these documents contained "different amounts and different signatures of certification."[4]

In August 1998, the casinos responded to Mr. Patterson's motion by filing copies of nunc pro tunc orders entered by the New Jersey court on June 16, 1998 again awarding them default judgments against Mr. Patterson. On this occasion, the New Jersey court granted the Trump Taj Mahal a judgment for $5,558.72 "plus costs of suit" and awarded the Boardwalk Regency a judgment for $5,587.32 "plus costs of suit." Mr. Patterson renewed his objection to the enforcement of the judgments. He insisted that the June 16, 1998 judgments were not authenticated and that they were "at least the third document one [sic] filed in this [c]ourt purporting to be the final judgment of the New Jersey court against this defendant. Each of these purported judgments is for a separate amount." He also invoked the doctrine of res judicata and insisted that the trial court's July 1996 dismissal of the earlier applications to enforce the judgments should bar the current applications.

On February 11, 1999, the trial court filed orders denying both casinos' applications to enforce their New Jersey judgments. The court concluded that "there was not a properly authenticated foreign judgment in this case" and that the documents purporting to be foreign

---

[1] The judgment included $5,558.72 in damages and $172.18 in costs for a total of $5,730.90.

[2] The judgment included $5,587.32 in damages and $172.75 in costs for a total of $5,760.07.

[3] The required affidavits of the casinos' Tennessee lawyer in support of enforcing these foreign judgments were, for some reason, not notarized. The trial court apparently did not deem this oversight material because it granted the casinos' lawyer permission to file properly notarized affidavits.

[4] Mr. Patterson argued that "[a] Tennessee court is not obligated to give full faith and credit where the party seeking enforcement has filed a string of so-called and inconsistent 'judgments.'"

judgments were "irregular" and in conflict with "other judgments filed in this record and in the predecessor record." The trial court also concluded that its previous dismissal of the casinos' applications to enforce the judgments "applied to bar the present action under the doctrine of *res judicata*." The casinos have appealed.

## II.
### THE STANDARD OF REVIEW

Mr. Patterson has not denied that he incurred the debts at the Boardwalk Regency and the Trump Taj Mahal, nor has he asserted that the Superior Court of New Jersey lacked either subject matter jurisdiction over the casinos' claims or personal jurisdiction over him. Instead, he asserts (1) that the judgments are not entitled to full faith and credit because the Superior Court of New Jersey is not a court of record, (2) that the casinos have not complied with the technical requirements of the Uniform Enforcement of Foreign Judgments Act, and (3) that the doctrine of res judicata bars the casinos' current efforts to enforce their judgments. All these defenses involve legal rather than factual questions. Accordingly, we will review the trial court's conclusions de novo without presuming that they are correct. *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001).

## III.
### THE ENFORCEABILITY OF GAMBLING DEBTS

One of the most settled principles of American jurisprudence is the constitutional mandate that each state must give full faith and credit to every other state's judicial proceedings. U.S. Const. art. IV, § 1. This principle is tempered by only a few narrow and specific qualifications. A state court asked to recognize a judgment of a court of another state may satisfy itself (1) that the court entering the judgment sought to be enforced had personal and subject matter jurisdiction, (2) that no fraud had been practiced on the foreign court entering the judgment, and (3) that enforcement of the foreign judgment would not violate the strong public policy of the state where the judgment is sought to be enforced. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704-05, 102 S. Ct. 1357, 1365-66 (1982); *Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn. 1978); *Hart v. Tourte*, 10 S.W.3d 263, 269 (Tenn. Ct. App. 1999); *Coastcom, Inc. v. Cruzen*, 981 S.W.2d 179, 181 (Tenn. Ct. App. 1998). This case touches upon the public policy exception.

Holding to American attitudes and prohibitions that predate the Revolutionary War,[5] Tennessee considers gambling contrary to the public policy of this state. Tenn. Code Ann. § 39-17-501(1) (Supp. 2001). In fact, both gambling and the promotion of gambling are misdemeanors, Tenn. Code Ann. §§ 39-17-502 and -503 (1997), and gambling debts incurred in Tennessee cannot be collected in Tennessee's courts. Tenn. Code Ann. § 29-19-102 (2000). However, notwithstanding Tennessee's official antipathy toward gambling, our courts have long held that judgments for out-of-state gambling debts are enforceable in Tennessee. In the words of the

---

[5]*See generally* Ann F. Withington, *Toward a More Perfect Union* 11 (1991) (discussing measures taken by the First Continental Congress to prohibit gambling activities).

Tennessee Supreme Court, reducing a gambling debt to judgment "purifies the contract from the gaming taint." *Holland v. Pirtle*, 29 Tenn. (10 Hum.) 167, 169 (1849). Thus, we have consistently enforced foreign judgments for gambling debts. *Robinson Props. Group, L.P. v. Russell*, No W2000-00331-COA-R3-CV, 2000 WL 33191371, at *4 (Tenn. Ct. App. Nov. 22, 2000) (No Tenn. R. App. P. 11 application filed); *Mirage Casino-Hotel v. Pearsall*, No. 02A01-9608-CV-00198, 1997 WL 275589, at *4-5 (Tenn. Ct. App. May 27, 1997) *perm. app. denied* (Tenn. Dec. 8, 1997); *Hotel Ramada of Nevada, Inc. v. Thakkar*, No. 03A01-9103-CV-00113, 1991 WL 135471, at *3-4 (Tenn. Ct. App. July 25, 1991) *perm. app. denied* (Tenn. Jan. 6, 1992). In this case, the fact that the casinos have judgments for gambling debts presents no impediment to their enrollment and enforcement by a Tennessee court.

## IV.
### THE STATUS OF JUDGMENTS OF THE SUPERIOR COURT OF NEW JERSEY

Mr. Patterson's first argument is that the casinos' judgments are not entitled to full faith and credit because they were not rendered by a court of record. This argument is wrong on two counts. First, Tenn. Code Ann. § 26-6-104(b) does not, even by implication, limit the judgments entitled to full faith and credit to those rendered by a court of record. Second, the Superior Court of New Jersey is, as a matter of law, a court of record.

Tenn. Code Ann. § 26-6-104(b) provides that our state courts will treat a foreign judgment "in the same manner as a judgment of a court of record in this state." Based on this language, Mr. Patterson asserts that in order for a foreign judgment to be accorded the same treatment as a judgment of a Tennessee court of record, the judgment must have been rendered by a court of record. This reasoning overlooks that neither U.S. Const. art. IV, § 1 nor Tenn. Code Ann. § 26-6-103 limits the judgments entitled to full faith and credit to judgments of "courts of record." According to Tenn. Code Ann. § 26-6-103, a "foreign judgment" entitled to full faith and credit in Tennessee is "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state."

In addition to his mistaken interpretation of Tenn. Code Ann. § 26-6-104(b), Mr. Patterson is also mistaken about the status of the Superior Court of New Jersey. That court, which is divided into the appellate, law, and chancery divisions, is New Jersey's court of original general jurisdiction. N.J. Const. art. VI, § 3; *Mayor & Council v. Brewster*, 80 A.2d 297, 301 (N.J. 1951). The law and chancery divisions of the court are the counterparts of Tennessee's circuit, chancery, and criminal courts.

A court of record is simply a court that permanently preserves regular minutes of its orders, judgments, and other proceedings. *Allen v. McWilliams*, 715 S.W.2d 28, 29 (Tenn. 1986); *Page v. Turcott*, 179 Tenn. 491, 503, 167 S.W.2d 350, 354-55 (1943). N.J. Stat. Ann. § 2A: 16-11 (West Supp. 2000), provides that

> The Clerk of the Superior Court shall keep a book known as a civil
> judgment and order docket in which shall be entered, an abstract of
> each judgment or order for the payment of money, submitted for

> entry, including a judgment or order to pay counsel fees and other fees or costs, entered from, or made in, the Superior Court.

Based on this statute, we conclude that the Superior Court of New Jersey, Law Division, Special Part is a court of record. As we have on prior occasions,[6] we also conclude that the judgments of the Superior Court of New Jersey are entitled to full faith and credit and are entitled to be filed with and enforced by the courts of this state.

## V.
### THE ADEQUACY OF THE AUTHENTICATION OF THE CASINOS' JUDGMENTS

Mr. Patterson also asserts that the casinos' New Jersey judgments are not entitled to be filed or enforced in Tennessee because their authentication does not comply with Tenn. Code Ann. § 26-6-104(a) or Tenn. Code Ann. § 26-6-105(a). We have determined that the trial court correctly determined that the casinos' lawyer's failure to comply with Tenn. Code Ann. § 26-6-105(a) was not a fatal oversight. However, we respectfully disagree with the trial court's conclusion that the New Jersey judgments were not authenticated as required by Tenn. Code Ann. § 26-6-104(a).

The requirements for filing a foreign judgment are few and straightforward. A person desiring to file a judgment must file a copy of the judgment that has been authenticated in accordance with Tennessee law. Tenn. Code Ann. § 26-6-104(a). Along with the authenticated copy of the judgment, the person desiring to file a judgment must also file an affidavit containing the names and last known addresses of the judgment creditor and the judgment debtor. Tenn. Code Ann. § 26-6-105(a). Once these documents are filed, the clerk of the court in which they were filed must issue a summons to the judgment debtor. Tenn. Code Ann. § 26-6-105(b). If the judgment debtor makes no response after being served, the judgment creditor may, after waiting thirty days, simply enforce the judgment by execution or other means. Tenn. Code Ann. § 26-6-105(c).

Although these procedures are simple, they are not optional. Both "affidavits" prepared by the casinos' lawyer to comply with Tenn. Code Ann. § 26-6-105(a) contain a blank notary's certificate, indicating that the lawyer knew that the documents were required to be notarized but for some reason neglected to have the documents notarized before filing them. Under Tennessee law, neither document, despite its title, qualifies as an affidavit because an affidavit is a written statement by the affiant that is made under oath. *State Dep't of Human Servs. v. Neilson*, 771 S.W.2d 128, 130 (Tenn. Ct. App. 1989). Accordingly, as far as this record shows, the casinos did not comply with Tenn. Code Ann. § 26-6-105(a).

However, under the facts of this case, the failure to notarize the documents intended to fulfill the requirements of Tenn. Code Ann. § 26-6-105(a) should not be fatal. No one has disputed the accuracy of the information in the documents, and the information was sufficient to enable the clerk and master to issue the summons to Mr. Patterson required by Tenn. Code Ann. § 26-6-105(b). Mr.

---

[6]In *Advanta Bus. Servs. Corp. v. McPherson*, No. W1999-02682-COA-R9-CV, 2000 WL 371194 (Tenn. Ct. App. April 11, 2000) (No Tenn. R. App. P. 11 application filed), we found that a judgment of the Superior Court of New Jersey was entitled to be registered and enforced in Tennessee.

Patterson received the summons, and accordingly, there is no question that he received the sort of timely notice of the filing of the foreign judgments that the Uniform Enforcement of Foreign Judgments Act envisioned. The trial court itself did not view this oversight as material because it granted both casinos permission to file properly-notarized affidavits. Accordingly, we conclude that the trial court correctly did not dismiss the applications to domesticate these judgments because of the casinos' lawyer's failure to comply with Tenn. Code Ann. § 26-6-105(a).[7]

We turn now to Mr. Patterson's claim that the "exemplified copy of judgment" and the January 16, 1998 order of the Superior Court for New Jersey were not properly authenticated. Because this case does not involve a judgment of a federal court, the question of authentication is governed by Tennessee law since Tenn. Code Ann. § 26-6-104(a) requires that the "foreign judgment [be] authenticated in accordance with the . . . statutes of this state." Thus, the pivotal question here is whether the copies of the New Jersey judgments filed by the casinos have been properly authenticated.

Tennessee courts have not yet construed what "authentication" for the purposes of Tenn. Code Ann. § 26-6-104(c) requires. In common parlance, an authenticated document is simply a writing whose genuineness and authenticity have been verified or certified. *Interinsurance Exchange v. Velji*, 118 Cal. Rptr. 596, 601 (Ct. App. 1975); 1 *Oxford English Dictionary* 796 (2d ed. 1989) (defining "authenticated" as "[i]nvested with authority, validity, trust, genuineness; certified"). Thus, for the purposes of the Uniform Enforcement of Foreign Judgements Act, authentication refers to the process of verifying the genuineness of the judgment, order, or other document in question. *Morrow v. Westphal*, 521 N.E.2d 283, 285 (Il. App. Ct. 1988).

We concur with the trial court that the copies of the January 16, 1998 nunc pro tunc orders of the Superior Court of New Jersey are not authenticated for the purposes of Tenn. Code Ann. § 26-6-104(a) because they bear no certificate or attestation of either the clerk of the Superior Court or the judge that they are true and accurate copies of the orders maintained in the records of the Superior Court of New Jersey Law Division.

The same cannot be said, however, for the two documents entitled "exemplified copy of judgement" filed with the trial court on December 17, 1996. Without reciting the details of the attestations attached to these documents, the attestations of both the clerk of the Special Civil Part of the Superior Court of New Jersey and the judge of that court demonstrate beyond reasonable question that the copies of these documents are what they purport to be "a true copy of the record in the cause . . . as full, entire and complete as the same on file in said Court . . .." Substantially similar attestations or certifications have been found to be sufficient under the Uniform Enforcement

---

[7]Notwithstanding the trial court's decision to permit the casinos to file properly-notarized affidavits as required by Tenn. Code Ann. § 26-6-105(a), the appellate record does not contain these affidavits or any other indication that they have been filed. The casinos have likewise not requested permission to supplement the appellate record with copies of these affidavits. Accordingly, because we do not know whether these affidavits have been filed, we are proceeding on the assumption that they have been filed. If they have not been filed, the trial court should give the casinos a reasonable time to file the affidavits to replace the non-notarized documents filed on December 17, 1996. If the casinos still fail to comply with Tenn. Code Ann. § 26-6-105(a), the trial court is free to dismiss the applications to domesticate these judgments.

of Foreign Judgments Act. *Lust v. Fountain of Life, Inc.*, 429 S.E.2d 435, 437 (N.C. Ct. App. 1993). Accordingly, we find that the trial court erred by concluding that the "exemplified copy of judgement" filed on behalf of each casino did not meet the authentication requirements of Tenn. Code Ann. § 26-6-104(a).[8]

# VI.
## THE RES JUDICATA EFFECT OF THE DISMISSAL OF THE FORMER APPLICATION

The final issue involves the correctness of the trial court's conclusion that the doctrine of res judicata bars the casinos' efforts to enforce these judgments because in June 1996 it had declined to enforce other judgments against Mr. Patterson. Res judicata is inapplicable in this case because the former Tennessee proceeding involved different New Jersey judgments and because the trial court's June 1996 order did not conclude the rights of the parties on the merits.

Res judicata is a claim preclusion doctrine that promotes finality in litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976); *Jordan v. Johns*, 168 Tenn. 525, 536-37, 79 S.W.2d 798, 802 (1935). It bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit. *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Brown v. Brown*, 29 S.W.3d 491, 495 (Tenn. Ct. App. 2000); *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995). In order for the doctrine of res judicata to apply, the prior judgment must conclude the rights of the parties on the merits. *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989); *Lewis v. Muchmore*, 26 S.W.3d 632, 637 (Tenn. Ct. App. 2000).

Parties asserting a res judicata defense must demonstrate (1) that a court of competent jurisdiction rendered the prior judgment, (2) that the prior judgment was final and on the merits, (3) that the same parties or their privies were involved in both proceedings, and (4) that both proceedings involved the same cause of action. *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A prior judgment or decree does not prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the reexamination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the legal rights and relations of the parties. *White v. White*, 876 S.W.2d 837, 839-840 (Tenn. 1994); *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000).

We have already disposed of the argument that a foreign judgment creditor should not be permitted more that one opportunity to use Tennessee's courts to enforce a foreign judgment. Thus, when an application to enforce a foreign judgment is dismissed on non-merits grounds, such as failure to comply with Tenn. Code Ann. § 26-6-104(a) or Tenn. Code Ann. § 26-6-105(a), we have

---

[8]Likewise, we see little merit in Mr. Patterson's protestations that these judgments are suspect because they are "inconsistent." In fact, they are completely consistent. Both judgments include damages and costs. The only difference between the "exemplified copy of judgement" and the later nunc pro tunc order is that the former actually calculates the costs adjudged against Mr. Patterson, while the latter simply awards a judgment for the "costs of suit." Were it necessary to reconcile inconsistent judgments, we would have applied the last-in-time rule employed by other courts to give effect to the last judgment. *Valley Nat'l Bank v. A.G. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997).

held that the doctrine of res judicata does not prevent the judgment creditor from re-filing documents in proper form. *Hart v. Tourte*, 10 S.W.3d at 267. In addition to the trial court's June 1996 dismissals not being on the merits of the casinos' claims, these proceedings, commenced in December 1996, involve new judgments that were not at issue in the earlier proceeding. Accordingly, we conclude that the trial court erred by invoking the res judicata doctrine as grounds to decline to permit the casinos to file and enforce their judgments against Mr. Patterson.

## VII.

Many of the difficulties encountered by the New Jersey casinos in this case stem from their own conduct. Nevertheless, in the final analysis, their omissions and oversights are not so material that they prevent the domestication and enforcement of their New Jersey judgments in Tennessee. Accordingly, the orders denying the casinos' application to enforce their judgments are reversed and the cases are remanded with directions to file these judgments as soon as the casinos have demonstrated that they have filed affidavits meeting the requirements of Tenn. Code Ann. § 26-6-105(a). We tax one-half of the costs of this appeal to Roy B. Patterson and one-half of the costs, jointly and severally, to Boardwalk Regency Corporation and Trump Taj Mahal Associates and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE